[No. AO15529. First Dist., Div. Three. Aug. 25, 1983.]

CHEVROLET MOTOR DIVISION, GENERAL MOTORS
CORPORATION, Plaintiff and Respondent, v.
NEW MOTOR VEHICLE BOARD, Defendant and Appellant;
49ER CHEVROLET, Real Party in Interest and Appellant;
NORTHERN CALIFORNIA MOTOR CAR DEALERS ASSOCIATION,
INC., et al., Interveners and Appellants.

534

**COUNSEL**

George Deukmejian and John K. Van de Kamp, Attorneys General, N. Eugene Hill, Assistant Attorney General, Harold W. Teasdale and Gordon Zane, Deputy Attorneys General, for Defendant and Appellant.

Richard E. Wilmshurst, in pro. per., for Real Party in Interest and Appellant.

Crow, Lytle, Gilwee, Donoghue, Adler & Wenninger, Richard E. Crow and James R. McCall for Interveners and Appellants.

McCutchen, Doyle, Brown & Enersen, J. Thomas Rosch, Richard C. Brautigam and Douglas Y. Peters for Plaintiff and Respondent.

**OPINION**

**SCOTT, J.**—This appeal is from a judgment granting a peremptory writ of mandamus, ordering that a decision of the state's New Motor Vehicle Board (the Board) be set aside. Appellants are the Board, real party in interest

49er Chevrolet (49er), and two associations of car dealers, Northern California Motor Car Dealers Association, Inc. and Motor Car Dealers of Southern California, Inc. (Associations), who were granted leave to intervene below. Respondent is Chevrolet Motor Division, General Motors Corporation (Chevrolet).

## I

The relevant facts are as follows. Chevrolet notified 49er, its dealer in Angels Camp, that when their existing franchise agreement expired on October 31, 1980, a new agreement would not be offered. 49er protested to the Board pursuant to Vehicle Code section 3060,[1] which provides in pertinent part that "no franchisor shall terminate or refuse to continue any existing franchise" for the marketing of new motor vehicles "unless" the Board "finds . . . good cause for termination or refusal to continue" the franchise. The Board consists of nine members, four of whom are required to be new motor vehicle dealers. (§§ 3000, 3001.) At a hearing on a dealer-manufacturer dispute, the dealer members of the Board may participate, hear, and comment or advise other members, but they may not "decide" the matter. (§§ 3050, subd. (d), 3066, subd. (d).)

After a hearing, the Board sustained 49er's protest. Chevrolet then filed this action, seeking to require the Board to vacate its decision. **(1a)** The trial court granted the petition for writ of mandate on two grounds: (1) participation of dealer board members in the deliberative process, without participation of manufacturers, deprived the manufacturers of an impartial tribunal, violating due process; and (2) the Board was without jurisdiction to hear 49er's protest as the manufacturer neither "terminat[ed] [n]or refus[ed] to continue any existing franchise" within the meaning of section 3060. This appeal followed.

## II

When the Board was originally established in 1967 as the New Car Dealers Policy and Appeals Board, it functioned much as do other state occupational licensing boards. Among its duties, for example, was the hearing of appeals by licensed dealers from decisions of the Department of Motor Vehicles. (See Stats. 1967, ch. 1397, § 2, p. 3261 et seq.; see *American Motors Sales Corp.* v. *New Motor Vehicle Bd.* (1977) 69 Cal.App.3d 983, 986 [138 Cal.Rptr. 594].) Four of the Board's nine members were required to be "new car dealers." (Stats. 1967, ch. 1397, § 2, pp. 3261-3262.)

---

[1]Unless otherwise indicated, all statutory references are to the Vehicle Code.

In 1973 the Legislature renamed the Board the New Motor Vehicle Board, and added sections 3060 to 3069, which established a series of procedures for the adjudication of disputes between dealers and new car manufacturers. (Stats. 1973, ch. 996, § 16, pp. 1967-1971.) Among other duties, the Board was empowered to determine whether there is "good cause" to terminate or refuse to continue a franchise. (§ 3060.) The requirement that four of the Board's members be new car dealers was not changed.

In *American Motor Sales Corp.* v. *New Motor Vehicle Bd., supra,* 69 Cal.App.3d 983, a dealer-franchisee protested a noticed termination to the Board, which found that good cause had *not* been shown. (*Id.,* at p. 985.) As in the present case, the franchisor challenged the Board's decision by petitioning the superior court for relief in administrative mandamus. The superior court granted relief, concluding that sections 3060 and 3066 of the act violated due process " 'because four of the nine members of the Board are . . . new car dealers, who may reasonably be expected to be antagonistic to franchisors . . . .' " (*Ibid.*)

In a two-to-one decision, the Court of Appeal affirmed, and the Supreme Court denied a petition for hearing. After taking note of "a long history of legal warfare between the automobile manufacturers and their dealers" (*American Motors Sales Corp.* v. *New Motor Vehicle Bd., supra,* 69 Cal.App.3d at p. 986), the court found it "unavoidable that dealer-members of the Board have an economic stake in every franchise termination case that comes before them. The ability of manufacturers to terminate any dealership, including that of a Board member, depends entirely upon the Board's interpretation of 'good cause.' It is to every dealer's advantage not to permit termination for low sales performance, which fact however is to every manufacturer's disadvantage." (*Id.,* at p. 987.)

The court acknowledged that in some instances a dealer Board member might be more financially interested in ruling in favor of the manufacturer, i.e., where the franchise of a competitor was being terminated, or where the dealer wished to ingratiate itself with its own manufacturer. The court viewed this not as fairness, but as an equalizing unfairness. "Either way, the objectionable feature of dealer-membership on the Board is the distinct possibility that a dealer-manufacturer controversy will not be decided on its merits but on the potential pecuniary interest of the dealer-members." (*American Motors Sales Corp.* v. *New Motor Vehicle Bd., supra,* 69 Cal.App.3d at pp. 987-988.)

The court distinguished cases holding that a licensing or regulatory agency may constitutionally be composed in whole or in part of members of the

business regulated, on the ground that the members of this Board were no longer merely regulating members of their own occupation. Instead, they were regulating the economic and contractual relations of others with members of their own occupation, but ". . . car dealers have no unique or peculiar expertise appropriate to the regulation of business affairs of car manufacturers." (*American Motors Sales Corp.* v. *New Motor Vehicle Bd., supra,* 69 Cal.App.3d at pp. 990-991.)

The court then stated that the Legislature's "requirement that the nine-man Board consist of at least four car dealers" meant that "[i]n effect it [the Legislature] took sides in all Board-adjudicated controversies between dealers and manufacturers, making certain that the dealer interests would at all times be substantially represented and favored on the adjudicating body. This legislative partisanship damns the Board." (*American Motors Sales Corp.* v. *New Motor Vehicle Bd., supra,* 69 Cal.App.3d at p. 991.) "[T]he objectionable feature of dealer-membership on the Board is the distinct possibility that a dealer-manufacturer controversy will not be decided on its merits but on the potential pecuniary interest of the dealer-members." (*Id.,* at pp. 987-988.) "Because the challenged Board members have a 'substantial pecuniary interest' in franchise termination cases [citation], their *mandated* presence on the Board potentially prevented a fair and unbiased examination of the issues before it in this case, in violation of due process." (*Id.,* at p. 992, original italics, fn. omitted.)

The court concluded as follows: "What we hold is that the combination of (1) the mandated dealer-Board members, (2) the lack of any counterbalance in mandated manufacturer members, (3) the nature of the adversaries in all cases (dealers v. manufacturers), and (4) the nature of the controversy in all cases (dispute between dealer and manufacturer) deprives a manufacturer-litigant of procedural due process, because the state does not furnish an impartial tribunal." (*American Motors Sales Corp.* v. *New Motor Vehicle Bd., supra,* 69 Cal.App.3d at p. 992; cf. *General Motors Corp.* v. *Capitol Chevrolet* (Tenn. 1983) 645 S.W.2d 230; *Ford Motor Company* v. *Pace* (1960) 206 Tenn. 559 [335 S.W.2d 360]; *Gen. GMC Trucks* v. *Gen. Motors Corp.* (1977) 239 Ga. 373 [237 S.E.2d 194].)

In reaction to the *American Motors Sales Corp.* decision, the Legislature amended section 3050, subdivision (d), and added subdivision (d) to section 3066 to provide that no member of the Board who is a new motor vehicle dealer may participate in, deliberate on, hear or consider, or decide, any matter involving a dispute between manufacturer and dealer. (See Stats. 1977, ch. 278, §§ 2-3, pp. 1171-1173; *Chrysler Corp.* v. *New Motor Vehicle Bd.* (1979) 89 Cal.App.3d 1034, 1037 [153 Cal.Rptr. 135].) However,

in a 1979 enactment which took effect as urgency legislation, the Legislature again amended the statutes, this time providing that dealer members of the Board "may participate in, hear, and comment or advise other members upon, but may not decide," any matter involving a dealer-manufacturer dispute. (§§ 3050, subd. (d), 3066, subd. (d); Stats. 1979, ch. 340, §§ 1-2, pp. 1206-1207.) According to the Legislature's declaration of urgency, the amendment was necessary "[i]n order that the educated and needed advice of New Motor Vehicle Board members who are themselves new motor vehicle dealers may be utilized in the decision making process of the board . . . ." (Stats. 1979, ch. 340, § 3, p. 1207.)

The trial court in this case concluded that the amendments to sections 3050 and 3066 did not "cure the unconstitutionality of the earlier provisions of the statute. . . ." The court reasoned that although dealer-Board members no longer have the right to vote, they have the opportunity fully to participate otherwise in the adjudicatory process, whereas the manufacturers are still left unrepresented.

■ First, appellants 49er and the Board argue that Chevrolet was not entitled to raise this constitutional question for the first time in the trial court. ■ The general rule is that an issue not raised at an administrative tribunal may not be raised in subsequent judicial proceedings. (See, e.g., *City of Walnut Creek* v. *County of Contra Costa* (1980) 101 Cal.App.3d 1012, 1019-1020 [162 Cal.Rptr. 224].) However, a litigant who seeks to challenge the constitutionality of the statute under which an agency operates need not raise that issue in proceedings before the agency as a condition of raising the issue in the courts. (See *State of California* v. *Superior Court* (1974) 12 Cal.3d 237, 250-251 [115 Cal.Rptr. 497, 524 P.2d 1281]; *Chrysler Corp.* v. *New Motor Vehicle Bd., supra,* 89 Cal.App.3d at pp. 1038-1039.)

■ Here Chevrolet was seeking a declaration that the statutes prescribing the Board's membership were unconstitutional. The Board itself could not have granted this relief because the Constitution expressly provides that an "administrative agency . . . has no power . . . [t]o declare a statute unconstitutional . . . ." (Cal. Const., art. III, § 3.5.) There was no waiver of Chevrolet's right to raise the constitutional issue in the trial court in these circumstances.

The Board and 49er also argue that Chevrolet should have requested that the dealer members "recuse" themselves from participating. The dealer members of the Board constituted almost half of its total membership (see §§ 3000-3001), and as members they were authorized to participate in fran-

chise disputes. (See § 3050, subd. (d).) If this argument were accepted, predictably automatic requests for the recusal of dealer members would have the effect of routinely depriving the Board of participation by a substantial number of its members in situations involving one of its basic functions. Clearly their recusal was not intended by the Legislature.

Next, appellants contend that *American Motors* is now of questionable validity, in light of *Andrews* v. *Agricultural Labor Relations Bd.* (1981) 28 Cal.3d 781 [171 Cal.Rptr. 590, 623 P.2d 151]. In that case, the Supreme Court held that an administrative law officer with expressed or "crystallized" political or legal views cannot be disqualified on that basis alone, even if those views result in an appearance of bias. (*Id.,* at pp. 791, 793-794.) Appellants reason that the group antagonism and economic conflict between dealers and manufacturers mean that car dealer Board members at most may have "crystallized views" about policy issues in adjudications between manufacturers and dealers. After *Andrews,* appellants urge, absent proof of actual bias, such views are not enough to support a holding that an adjudicator cannot provide a fair tribunal.

However, the *American Motors* court did not find the dealer Board members partial because of their views on issues of law or policy; rather, that court squarely held that those Board members had an "economic stake" in every franchise termination case which came before them. The *Andrews* court itself acknowledged that no proof of actual bias is required for disqualification when a judicial officer has a financial interest in a case. (*Andrews* v. *Agricultural Labor Relations Bd., supra,* 28 Cal.3d at p. 793, fn. 5.)

Appellants then argue that the Board is not a biased tribunal and its action in this case did not deny Chevrolet due process because none of the "adjudicator members" of the Board were biased. Appellants emphasize that there is no contention made that any factor exists which could lead a court to find that the five public members of the Board were or are biased. According to appellants, the dealer members' participation in these proceedings was solely to provide expert advice, a function analogous to that provided to other boards or commissions by agency staff members or assistants. (See, e.g., *Porter County Chapter* v. *Nuclear Reg. Com'n* (D.C. Cir. 1979) 606 F.2d 1363, 1370-1372.)

We are not persuaded by appellants' attempts to minimize the dealer Board members' role in these proceedings. Unlike agency staff, the dealer Board members have a financial stake in every dealer-manufacturer dispute which comes before the Board. (*American Motors Sales Corp.* v. *New Mo-*

*tor Vehicle Bd., supra,* 69 Cal.App.3d at p. 987.) Nevertheless, they are permitted to participate actively in hearings on dealer-manufacturer disputes, hear the evidence, and comment upon and advise other Board members in such matters. In other words, although they must stop short of actually voting on a dispute, they may take part in every other aspect of the decisionmaking process, despite their financial interest in the outcome of that process. The Board has numerous powers and duties other than hearing protests by dealers, and the dealer Board members' participation in those other tasks is unrestricted. (See § 3050.) Because of their ongoing working relationship, public members of the Board may be influenced by arguments or facts suggested by the dealer members but not included in the public record, and the parties themselves may not have the opportunity to respond.

 In short, the presence of biased members on the Board presents a substantial probability that decisions in dealer-manufacturer disputes will be made on the basis of inappropriate considerations, and the fact that those members do not technically "decide" the disputes does not alter that probability. Each of the factors enumerated in *American Motors* is still present. The Board is still required by statute to have four dealer members. (See § 3001.) The statute neither requires nor authorizes manufacturer members. (See *ibid.*) The nature of the adversaries and the controversies between them remains the same. These problems have not been remedied by the subsequent changes in sections 3050 and 3066. Accordingly, the trial court did not err when it concluded that participation of the Board's dealer members in these proceedings denied Chevrolet an unbiased tribunal.

In light of our conclusion, we need not consider appellants' contention that the court also erred when it concluded that Chevrolet did not terminate or refuse to continue the franchise within the meaning of section 3060.

Judgment is affirmed.

White, P. J., and Feinberg, J., concurred.

Petitions for a rehearing were denied September 23, 1983, and the petitions of all the appellants for a hearing by the Supreme Court were denied October 20, 1983. Grodin, J., did not participate therein.