[No. D001579. Fourth Dist., Div. One. Apr. 3, 1986.]

UNIVERSITY CHRYSLER-PLYMOUTH, INC.,
Plaintiff and Appellant, v.
NEW MOTOR VEHICLE BOARD, Defendant and Appellant;
CHRYSLER CORPORATION, Real Party in Interest and Respondent.

CHRYSLER CORPORATION, Plaintiff and Respondent, v.
NEW MOTOR VEHICLE BOARD, Defendant and Appellant;
UNIVERSITY CHRYSLER-PLYMOUTH, INC.,
Real Party in Interest and Appellant.

798

COUNSEL

Murfey, Griggs & Fredrick, Murfey, Hill & DuVal, Robert J. Fredrick, Coder & Tuel and Michael G. Coder for Plaintiff and Appellant and Real Party in Interest and Appellant.

John K. Van de Kamp, Attorney General, and Melvin R. Segal, Deputy Attorney General, for Defendant and Appellant.

Crow, Lytle, Gilwee, Donoghue, Adler & Weninger, Richard E. Crow and James R. McCall as Amici Curiae on behalf of Plaintiff and Appellant, Real Party in Interest and Appellant and Defendant and Appellant.

Franklin H. Wilson, Michael M. Johnson, John A. Ruocco and McCutchen, Black, Verleger & Shea for Real Party in Interest and Respondent and Plaintiff and Respondent.

Elizabeth A. Mulroy as Amicus Curiae on behalf of Real Party in Interest and Respondent and Plaintiff and Respondent.

OPINION

**STANIFORTH, Acting P. J.**—The issues presented by this appeal are (1) whether the New Motor Vehicle Board (Board), which is composed of new motor vehicle dealers and members of the public, is an impartial forum for

resolving disputes between motor vehicle dealers and manufacturers and (2) if it is not an impartial forum because of the new motor vehicle dealers' membership, whether such defect can be remedied by voluntary recusal of the Board's dealer members.

The appellants are the Board and the real party in interest, University Chrysler-Plymouth, Inc. (University). Chrysler Corporation (Chrysler) is the respondent. Amicus curiae briefs were filed by Motor Car Dealers Association of Southern California, Inc., and Northern California Motor Car Dealers Association, Inc., in favor of the Board and University and by the Center for Public Interest Law in support of Chrysler.

## FACTS

In 1983, Chrysler terminated its dealer agreement with University because University had allegedly violated the dealer agreement by relocating without Chrysler's permission and by entering into a dual dealership.[1] University filed a protest of the termination with the Board. A hearing was held before an administrative law judge who held Chrysler lacked good cause to terminate the dealership and recommended continuation of the dealership on the condition University relocate within two years. The Board adopted the administrative law judge's decision without change. The dealer members were not present at the Board meeting.

Both University and Chrysler filed petitions for a writ of mandate in superior court; University based on the asserted invalidity of the relocation condition, Chrysler initially based on the insufficiency of the evidence and later on the partiality of the forum. The writs were consolidated. The court granted Chrysler's writ and ordered the decision of the Board be set aside "on the ground that the Board's composition which includes licensed new car dealers as members and specifically excludes any employee or representative of an automobile manufacturer denies Chrysler Corporation its constitutionally guaranteed right to an impartial tribunal."

## DISCUSSION

### I

University first argues Chrysler waived its right to complain of the Board's composition because Chrysler failed to file an affidavit of prejudice against the administrative law judge as required by Board regulations.

---

[1] A dual dealership is one where cars from two different manufacturers are sold at one location.

Chrysler apparently had no objections to the particular administrative law judge's qualifications but rather to the composition of the Board itself. At the hearing before the administrative law judge, Chrysler entered an objection to the Board's composition. This objection sufficiently raised and preserved the issue. Moreover, "a litigant who seeks to challenge the constitutionality of the statute under which an agency operates need not raise that issue in the proceedings before the agency as a condition of raising the issue in the courts." (*Nissan Motor Corp.* v. *New Motor Vehicle Bd.* (1984) 153 Cal.App.3d 109, 115 [202 Cal.Rptr. 1].)[2]

## II

The Legislature has provided the Board have nine members: five members from the public at large (public members) and four members who are new motor vehicle dealers (dealer members). (Veh. Code, §§ 3000, 3001.)[3] The Board was originally created in 1967 as the New Car Dealers Policy and Appeals Board to deal with the licensing and regulation of new motor vehicle dealers. (§§ 3000, 3050.) Its function was similar to other occupational licensing boards. (*Chevrolet Motor Division* v. *New Motor Vehicle Bd.* (1983) 146 Cal.App.3d 533, 536 [194 Cal.Rptr. 270], cert. den. 465 U.S. 1102 [80 L.Ed.2d 129, 104 S.Ct. 1597, 1598].) In 1974, the Legislature gave the Board its present name and increased its powers to include resolving disputes relating to (1) whether there is "good cause" to terminate or to refuse to continue a franchise (§ 3060); (2) whether there is "good cause" not to establish or relocate a motor vehicle dealership in a "relevant market area" (§ 3062); (3) delivery and preparation obligations (§ 3064); and (4) warranty reimbursement (§ 3065).

In 1977, the court in *American Motors Sales Corp.* v. *New Motor Vehicle Bd.* (1977) 69 Cal.App.3d 983 [138 Cal.Rptr. 594], found the dealer members had "an economic stake in every franchise termination case that comes before them" (*id.,* at p. 987) and concluded: "[T]he combination of (1) the mandated dealer-Board members, (2) the lack of any counterbalance in mandated manufacturer members, (3) the nature of the adversaries in all cases (dealers v. manufacturers), and (4) the nature of the controversy in all cases (dispute between dealer and manufacturer) deprives a manufacturer-litigant of procedural due process, because the state does not furnish an impartial tribunal." (*Id.,* at p. 992.)

---

[2]University also contends Chrysler waived the due process issue by failing to comply with the requirements of *Andrews* v. *Agricultural Labor Relations Bd.* (1981) 28 Cal.3d 781 [171 Cal.Rptr. 590 623 P.2d 151], i.e., a showing of concrete facts establishing actual bias. We discuss the applicability of *Andrews* in section III, *infra.*

[3]All statutory references are to the Vehicle Code unless otherwise specified.

The court distinguished cases involving licensing or regulatory agencies containing members of the business or profession regulated. The court reasoned when an agency's members regulate other individuals of the same profession, there is little if any economic benefit involved and the members' necessary expertise is lacking in lay persons. (*American Motors Sales Corp., supra,* 69 Cal.App.3d 983, 990-991.) The court concluded the Board was legally constituted when it sat in judgment solely on matters involving license eligibility and qualifications of other motor vehicle dealers but not when it heard matters involving dealer—manufacturer disputes. The court noted "car dealers have no unique or peculiar expertise appropriate to the regulation of business affairs of car manufacturers." (*Id.,* at p. 991.) The court went on to state: "Despite this reality, the Legislature retained the requirement that the nine-man Board consist of at least four car dealers. In effect it took sides in all Board-adjudicated controversies between dealers and manufacturers, making certain that the dealer interests would at all times be substantially represented and favored on the adjudicating body. This legislative partisanship damns the Board. The state may not establish an adjudicatory tribunal so constituted as to slant its judicial attitude in favor of one class of litigants over another. By doing so in this instance, the Legislature violated its obligation to assure evenhandedness in the adjudicatory process." (*Ibid.*)

The *American Motors* court also found the fact a majority of the Board's members were public members did not cure the defect. The court stated: "The evil here lies in the state's insistence that under all circumstances the adjudicatory deck of cards be stacked in favor of car dealers. That evil is not eliminated by stacking the deck four-ninths of the way rather than all the way." (69 Cal.App.3d 983, 993.)

In response to the *American Motors* decision, the Legislature in 1977 eliminated dealer-member involvement in disputes between dealers and manufacturers. (See Stats. 1977, ch. 278, §§ 2-3, pp. 1171-1173; *Chrysler Corp.* v. *New Motor Vehicle Bd.* (1979) 89 Cal.App.3d 1034, 1037 [153 Cal.Rptr. 135].) However, after lobbying by the California Automobile Dealers Association, the Legislature in 1979 again amended the statutes in urgency legislation to provide dealer-members "may participate in, hear, and comment or advise other members upon, but may not decide" any matter involving a dealer-manufacturer dispute. (§§ 3050, subd. (d), 3066, subd. (d); Stats. 1979, ch. 340, § 102, pp. 1206-1207.)

This provision was likewise declared unconstitutional for failing to guarantee due process. (*Nissan Motor Corp.* v. *New Motor Vehicle Bd., supra,* 153 Cal.App.3d 109; *Chevrolet Motor Division* v. *New Motor Vehicle Bd.,*

*supra,* 146 Cal.App.3d 533.) These courts found: "'[T]hey [the dealer-members] are permitted to participate actively in hearings on dealer-manu-facturer disputes, hear the evidence, and comment upon and advise other Board members in such matters. In other words, although they must stop short of actually voting on a dispute, they may take part in every other aspect of the decision-making process, despite their financial interest in the outcome of that process. . . . Because of their ongoing working relation-ship, public members of the Board may be influenced by arguments or facts suggested by the dealer members but not included in the public record, and the parties themselves may not have the opportunity to respond. [¶] In short, the presence of biased members on the Board presents a substantial proba-bility that decisions in dealer-manufacturer disputes will be made on the basis of inappropriate considerations, and the fact that those members do not technically "decide" the disputes does not alter that probability. Each of the factors enumerated in *American Motors* is still present.' (*Chevrolet Motor Division* v. *New Motor Vehicle Bd., supra,* 146 Cal.App.3d at p. 541.)" (*Nissan Motor Corp.* v. *New Motor Vehicle Bd., supra,* 153 Cal.App.3d 109, 115.)

## III

 The Board argued in both *Chevrolet* and *Nissan,* as do University and amicus here, that the *American Motors* decision is of questionable va-lidity in light of the California Supreme Court's decision in *Andrews* v. *Agricultural Labor Relations Bd., supra,* 28 Cal.3d 781. Both the *Nissan* and *Chevrolet* courts rejected this argument (*Nissan Motor Corp.* v. *New Motor Vehicle Bd., supra,* 153 Cal.App.3d 109, 116; *Chevrolet Motor Di-vision* v. *New Motor Vehicle Bd., supra,* 146 Cal.App.3d 533, 540.) We agree *Andrews* does not undermine the validity of *American Motors.*

*Andrews* involved an agricultural employer charged with interfering with its employees' rights under the Agricultural Labor Relations Act. The em-ployer made a motion to disqualify the administrative law officer, an attor-ney. The employer asserted the attorney was biased because he practiced law in a firm which had represented farm workers in labor disputes and Mexican-Americans in employment discrimination cases. The Supreme Court held even if the nature of the attorney's law practice could be used as evidence to show the attorney had a particular political or social outlook, such evidence would not establish grounds for disqualification on the basis of bias. (*Andrews* v. *Agricultural Labor Relations Bd., supra,* 28 Cal.3d 781, 790.) The court first noted "'[b]ias in the sense of crystallized point of view about issues of law or policy is almost universally deemed no ground for disqualification.' (2 Davis, Administrative Law Treatise (1st ed.

1958) p. 131; . . . .)" (*Ibid.*) The court then observed it would be impossible, and indeed undesirable, to require adjudicators to be entirely devoid of opinions and notions on the issues before them. (*Ibid.*) The Supreme Court held a party seeking disqualification for bias must show (1) there is prejudice against a particular party and (2) the prejudice is sufficient to impair the judge's impartiality so it appears probable a fair trial cannot be had (*id.,* at p. 792); a mere "appearance of bias" is insufficient (*id.,* at p. 793).

The Board argues Chrysler established only the dealer-members had a "crystallized point of view" and not actual bias and therefore, under *Andrews* the presence of dealer-members on the Board did not deprive Chrysler of an impartial tribunal. *Andrews* is not controlling here.

First, *Andrews* is factually distinguishable. The adjudicator in *Andrews* was not a member of either class of litigants involved, i.e., he was not an agricultural employer or employee. In contrast here, the challenged adjudicators are members of one class of litigants: new motor vehicle dealers.

Second, *Andrews* involved a challenge for impartiality based on the adjudicator's perceived bias due to his political and social views. Here, the challenge of impartiality rests on the dealer-members' financial interest in the outcome of the disputes. (*American Motors Sales Corp.* v. *New Motor Vehicle Bd., supra,* 69 Cal.App.3d 983, 992.) The Supreme Court in *Andrews,* after noting "our courts have never required the disqualification of a judge unless the moving party has been able to demonstrate concretely the actual existence of bias" (*Andrews* v. *Agricultural Labor Relations Bd., supra,* 28 Cal.3d 781, 793, fn. omitted), went on to explain: "Of course, there are some situations in which the probability or likelihood of the existence of actual bias is so great that disqualification of a judicial officer is required to preserve the integrity of the legal system, even without proof that the judicial officer is actually biased towards a party. (See, e.g., *Peters* v. *Kiff* (1972) 407 U.S. 493, 502 . . . [discussing *Tumey* v. *Ohio* (1927) 273 U.S. 510 . . ., in which a judge was disqualified because of his financial stake in the outcome].)" (*Id.,* at p. 793, fn. 5.) The Supreme Court observed the Legislature in Code of Civil Procedure section 170 has "demanded disqualification" of a judicial officer on the ground of financial interest. The court concluded such a situation is "entirely distinct from a case in which bias itself is charged." (*Ibid.*)

Thus, the *Andrews* court, while rejecting an "appearance of bias" standard based on a judicial officer's perceived political or philosophical views, specifically recognized actual bias need not be shown when the alleged bias

is due to a financial interest in the outcome of the dispute. The *American Motors* decision and its progeny are based on the dealer-members' financial interest of and not "solely because they are members of the dealer-class of litigants." (*American Motors Sales Corp.* v. *New Motor Vehicle Bd., supra,* 69 Cal.App.3d 983, 992.)

## IV

The Board and University contend the dealer-members' voluntary recusal cures the constitutional defect.

Here the Board submitted a declaration of its executive secretary, stating "No dealer member has participated in, heard, or commented on or advised other members" on matters involving dealer-manufacturer disputes since the *Nissan* decision.

To support their position the Board and University point to the Legislature's use of the permissive language "may" in its authorization of dealer-member participation in dealer-manufacturer disputes and its provision only three members of the Board are necessary to constitute a quorum in protest hearings. The Board also points to the *Nissan* court's remand "for further proceedings before a Board *acting without the participation of the new motor vehicle dealer members*" as further support. (*Nissan Motor Corp.* v. *New Motor Vehicle Bd., supra,* 153 Cal.App.3d 109, 116, italics added.)

Both the *Nissan* and *Chevrolet* courts found the Legislature did not intend automatic recusal of dealer-members since the Legislature-mandated dealer members constitute almost one-half of the total Board membership authorized to participate in franchise disputes. (*Nissan Motor Corp.* v. *New Motor Vehicle Bd., supra,* 153 Cal.App.3d 109, 115-116; *Chevrolet Motor Division* v. *New Motor Vehicle Bd., supra,* 146 Cal.App.3d 533, 539-540.)

The *Chevrolet* court, in rejecting the Board's argument Chevrolet should have requested the dealer-members recuse themselves, reasoned: "If this argument were accepted, predictably automatic requests for the recusal of dealer members would have the effect of routinely depriving the Board of participation by a substantial number of its members in situations involving one of its basic functions. Clearly their recusal was not intended by the Legislature." (*Chevrolet Motor Division* v. *New Motor Vehicle Bd., supra,* 146 Cal.App.3d 533, 540.)

This interpretation is supported by the legislative history of the 1979 amendment. The Legislature stated it was passing the amendment as an

urgency measure "[i]n order that the educated and needed advice of New Motor Vehicle Board members who are themselves new motor vehicle dealers may be utilized in the decision making process of the board." (1979 Stats., ch. 340, § 3.) The Senate Transportation Committee in its analysis stated: "The New Motor Vehicle Board staff claims that they lack the capacity to adequately advise Board members on dealer/franchise controversies." (Sen. Transportation Com. Analysis of Sen. Bill No. 417 (1979).) The Assembly Transportation Committee explained: "This proposal was introduced at the request of the California Automobile Dealers' Association's Board in order to avail the board members to [sic] the expertise of the dealer members when matters are before the Board which effect [sic] vehicle dealers. The New Motor Vehicle Board [staff] has indicated that the *dealer expertise* in matters of conflict of dealer/franchise *is critical* and the Board should be permitted to benefit from the dealer's knowledge on such matters." (Assem. Transportation Com. Analysis of Sen. Bill No. 417 (1979), italics added.)

■ This background makes it clear the Legislature intended the dealer-members to actively participate in the resolution of dealer-manufacturer disputes and intended the public members to rely on the dealer-members' "educated and needed advice." The fact the Legislature made the dealer-members' participation permissive rather than mandatory does not negate this legislative intent. The use of the permissive "may" indicates only that participation by dealer members in general or as individuals is not required in all cases. It does not support a conclusion the Legislature contemplated automatic recusal of all dealer-members in protest hearings. Nor is such a conclusion supported by the fact the Legislature designated three members as sufficient for a quorum in protest hearings. Contrary to the Board's inference that the quorum requirement is directed at three of the five public members, there is no language in the statute to support such an inference and, further, such inference conflicts with the expressed legislative intent favoring dealer-member participation.

■ In sum, the Board's policy of automatic recusal in protest hearings, while an admirable attempt to comply with constitutionally mandated due process requirements, directly contradicts the Legislature's intent. ■ An administrative agency may not, in the absence of valid statutory or constitutional authority, substitute its judgment for that of the Legislature under the guise of regulation. (*California State Restaurant Assn.* v. *Whitlow* (1976) 58 Cal.App.3d 340, 347 [129 Cal.Rptr. 824].) "Administrative regulations in conflict with applicable statutes are null and void. [Citations.]" (*Ibid.*)

■ The Board here, by seeking court approval of its recusal policy is, in essence, asking the judiciary to rewrite the statutes in question, e.g., to change the composition of the Board and the responsibilities of the dealer members. This we may not do. ■ "If the scope of a statute cannot be limited to situations to which it may constitutionally apply except 'by reading into it numerous qualifications and exceptions' amounting 'to a wholesale rewriting of the provision,' the statute cannot be saved by judicial construction but must be declared invalid." (*Blair* v. *Pitchess* (1971) 5 Cal.3d 258, 282 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206], quoting *Fort* v. *Civil Service Commission* (1964) 61 Cal.2d 331, 340 [38 Cal.Rptr. 625, 392 P.2d 385].) ■ Accordingly, we must declare the statute invalid because it deprives a manufacturer litigant of its constitutionally guaranteed right to an impartial tribunal.

The judgment is affirmed.

Butler, J., and Mitchell, J.,* concurred.

Petitions for a rehearing were denied April 24, 1986, and the petitions of appellants University Chrysler-Plymouth, Inc. and New Motor Vehicle Board for review by the Supreme Court were denied July 16, 1986.

*Assigned by the Chairperson of the Judicial Council.