[No. B013980. Second Dist., Div. One. Oct. 16, 1986.]

AMERICAN ISUZU MOTORS, INC., Plaintiff and Appellant, v.
NEW MOTOR VEHICLE BOARD, Defendant and Respondent;
RAY FLADEBOE LINCOLN MERCURY, INC.,
Real Party in Interest and Respondent.

COUNSEL

Lillick, McHose & Charles and Donald F. Woods, Jr., for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Henry G. Ullerich and John J. Crimmins, Deputy Attorneys General, for Defendant and Respondent.

Pilot & Spar and Michael J. Flanagan for Real Party in Interest and Respondent.

OPINION

LUCAS, J.—American Isuzu appeals from judgment denying its petition for writ of mandate. (Code Civ. Proc., § 1094.5.) We affirm.

I

FACTS

In November 1983, American Isuzu notified Ray Fladeboe Isuzu of its intention to terminate Fladeboe's Isuzu franchise. The notice of termination set forth the specific grounds for termination, as required by Vehicle Code section 3060:[1] "You have failed to maintain the authorized facility for the sale of Isuzu products open for business and have attempted to conduct your dealership operations from a facility other than the one authorized by the Isuzu Dealer Sales and Service Agreement."

Fladeboe filed a protest with the California New Motor Vehicle Board in accordance with the provisions of section 3060. After hearing, the board sustained the protest, finding that the sole grounds for Isuzu's proposed termination of franchise was Fladeboe's purported failure to provide an exclusive showroom, that the franchise agreement did not require an exclusive showroom, and that even if it did so require, good cause was not established to terminate the franchise.

Isuzu filed a petition for writ of mandate in superior court, seeking to have the board's decision set aside. The superior court upheld the decision

---

[1]Unless otherwise noted, all statutory references are to the Vehicle Code.

of the board in all respects and denied the petition. Isuzu appeals, claiming error in the decision of the superior court and asserting that the New Motor Vehicle Board is unconstitutional. We reject both contentions and affirm.

## II

### CONSTITUTIONAL CHALLENGE

■ Section 3001 requires that four of the nine members of the New Motor Vehicle Board be new car dealers. In *American Motors Sales Corp. v. New Motor Vehicle Bd.* (1977) 69 Cal.App.3d 983, 992 [138 Cal.Rptr. 594], the court concluded that the board is not an unbiased tribunal for the resolution of dealer-manufacturer disputes, since dealer board members have a financial stake in every such dispute that comes before the board; "the combination of (1) the mandated dealer-Board members, (2) the lack of any counterbalance in mandated manufacturer members, (3) the nature of the adversaries in all cases (dealers v. manufacturers), and (4) the nature of the controversy in all cases (dispute between dealer and manufacturer) deprives a manufacturer-litigant of procedural due process, because the state does not furnish an impartial tribunal."

In response to the *American Motors* decision, the Legislature amended section 3050, subdivision (d) and added subdivision (d) to section 3066 to provide that no member of the board who is a new motor vehicle dealer may participate in, deliberate on, hear or consider, or decide, any matter involving a dispute between manufacturer and dealer. (See Stats. 1977, ch. 278, §§ 2-3, pp. 1171-1173.) At the same time they amended section 3010, which required five members of the board to constitute a quorum for the transaction of any board business; five members still constitute a quorum "except that three members of the board, who are not new motor vehicle dealers, shall constitute a quorum" for the purposes of dealer-manufacturer disputes. (Stats. 1977, ch. 278, § 1, p. 1171.)

After lobbying by the California Automobile Dealers Association, the Legislature again amended these statutes in 1979 to provide that dealer members "may participate in, hear, and comment or advise other members upon, but may not decide, any matter" involving a manufacturer-dealer dispute. (§§ 3050, subd. (d), 3066, subd. (d); as amended by Stats. 1979, ch. 340, §§ 1-2, pp. 1206-1207.)

In *Chevrolet Motor Division v. New Motor Vehicle Bd.* (1983) 146 Cal.App.3d 533, 540-541 [194 Cal.Rptr. 270], the court held that these changes did not cure the constitutional deficiencies of the board: "[T]he

presence of biased members on the Board presents a substantial probability that decisions in dealer-manufacturer disputes will be made on the basis of inappropriate considerations, and the fact that those members do not technically 'decide' the disputes does not alter that probability. Each of the factors enumerated in *American Motors* is still present. The Board is still required by statute to have four dealer members. (See § 3001.) The statute neither requires nor authorizes manufacturer members. (See *ibid.*) The nature of the adversaries and the controversies between them remains the same. These problems have not been remedied by the subsequent changes in sections 3050 and 3066. Accordingly, the trial court did not err when it concluded that participation of the Board's dealer members in these proceedings denied Chevrolet an unbiased tribunal." The same result was reached in *Nissan Motor Corp.* v. *New Motor Vehicle Bd.* (1984) 153 Cal.App.3d 109, 114-115 [202 Cal.Rptr. 1].

In response to these holdings, the board began a policy of voluntary recusal of dealer members in all dealer-manufacturer disputes. The case before us was heard under this policy; although the relevant statutes provided that dealer members could participate in the hearing, but not in the actual decisionmaking, the matter was actually heard and decided only by the nondealer members of the board, with no dealer members participating in any way.

American Isuzu argues that this policy did not correct the constitutional defect, since it demands a virtual rewriting of the statutes in a manner contradictory to the Legislature's intent that dealer members participate in dealer-manufacturer disputes. This argument was accepted in the recent decision of *University Ford Chrysler-Plymouth, Inc.* v. *New Motor Vehicle Bd.* (1986) 179 Cal.App.3d 796, 805-806 [224 Cal.Rptr. 908], which held the statutes unconstitutional despite the voluntary recusal policy. The court relied heavily on the Legislature's expressed intent that the 1979 amendment allowing dealer members to participate in but not decide manufacturer-dealer disputes be enacted as an urgency measure: "In order that the educated and needed advice of New Motor Vehicle Board members who are themselves new motor vehicle dealers may be utilized in the decision making process of the board, it is necessary that this act take effect immediately." (Stats. 1979, ch. 340, § 3, pp. 1207-1208.)

Although the Legislature's intent in 1979 appears to have been to utilize the expertise of dealer members in resolving dealer-manufacturer disputes, we find that subsequently a different and equally clear intent emerged in

the face of the court rulings holding such participation unconstitutional. (*Chevrolet Motor Division* v. *New Motor Vehicle Bd.*, *supra*, 146 Cal.App.3d 533, 540-541; *Nissan Motor Corp.* v. *New Motor Vehicle Bd.*, *supra*, 153 Cal.App.3d 109, 114-115.) In 1985, the statutes in question were again amended to read: "A member of the board who is a new motor vehicle dealer may *not* participate in, hear, comment, advise other members upon, or decide any matter considered by the board" involving a dispute between a franchisee and franchisor. (Sec. 3050, subds. (c), (d), as amended by Stats. 1985, ch. 1201, § 2; § 3066, subd. (d), as amended by Stats. 1985, ch. 1566, § 2; italics added.) These changes were enacted by urgency legislation; the Legislature explained: "The facts constituting the necessity [for urgency legislation] are: In order to comply with court decisions regarding hearings of the New Motor Vehicle Board, and to revise administrative procedures of the board as early as possible, it is necessary that this act take effect immediately." (Stats. 1985, ch. 1201, § 7.) The Legislature's concern no longer appears centered on the assistance of dealer members in resolving disputes; the strong intent instead is that the board, *in a form that is constitutionally permissible*, be able to act effectively to resolve dealer-manufacturer disputes.

The voluntary recusal policy which resulted in hearing and determination of disputes solely by the public members of the board was not contrary to this intent; instead, it was a foreshadowing of the Legislature's solution to the due process problems of bias that troubled the previous statutes. Under both the voluntary recusal policy and the 1985 amendments, dealer-members do not participate in, hear, comment, advise other members upon, or decide any dispute between a dealer and a manufacturer. By its 1985 amendments, the Legislature essentially ratified the voluntary recusal policy practiced by the board. (See *Hewitt* v. *Rincon del Diablo Municipal Water Dist.* (1980) 107 Cal.App.3d 78, 91 [165 Cal.Rptr. 545].) Inasmuch as the Fladeboe-American Isuzu protest was determined under the voluntary recusal policy with only the public members of the board participating in any way, it was untainted by dealer bias and did not deprive American Isuzu of procedural due process. To remand this matter for a new hearing before only the public members pursuant to the 1985 amendments would serve no purpose; the panel that heard this matter the first time operated with the same makeup and restraints under the voluntary recusal policy as exist under the 1985 statutes.

Appellant argues that even without participation of dealer members in dealer-manufacturer protests, the board is still unconstitutionally biased by the dealer members' collegial influence over the public members, since they all work together on other board business such as rulemaking, licensing,

discipline, election of officers, and, in particular, selection of hearing officers. We disagree.

■ Due process, of course, requires a competent and impartial tribunal for administrative hearings. (*Peters* v. *Kiff* (1972) 407 U.S. 493, 501 [33 L.Ed.2d 83, 93, 92 S.Ct. 2163.]) ■ If, as appellant asserts, the public members of the board were biased, determination of matters before that tribunal would result in a denial of due process. In *Andrews* v. *Agricultural Labor Relations Bd.* (1981) 28 Cal.3d 781, 792-794 [171 Cal.Rptr. 590, 623 P.2d 151], our Supreme Court reaffirmed that disqualification of a judicial or administrative law officer for bias cannot be based solely on expressed or crystallized political or legal views, even if those views result in an appearance of bias. A party must generally allege concrete facts that demonstrate the challenged judicial officer is contaminated with actual bias or prejudice; bias and prejudice are never to be implied. Appellant has alleged no such facts in this case.

However, Andrews recognizes "some situations in which the probability or likelihood of the existence of actual bias is so great that disqualification of a judicial officer is required to preserve the integrity of the legal system, even without proof that the judicial officer is actually biased towards a party. [Citations.] In California, these situations are codified in Code of Civil Procedure section 170, subdivisions 1-4. They include cases in which the judicial officer either has a personal or financial interest, has a familial relation to a party or attorney, or has been counsel to a party. The Legislature has demanded disqualification in these special situations regardless of the fact that the judicial officer nevertheless may be able to discharge his duties impartially. The evident and justifiable rationale for mandatory disqualification in all such circumstances is apprehension of an appearance of unfairness or bias. However, the instances addressed in section 170, subdivisions 1-4, are entirely distinct from a case in which bias itself is charged under subdivision 5 of that statute as the ground for disqualification. As explained above, the subjective charge of an appearance of bias alone does not suffice to demonstrate that a judicial officer is infected with actual bias." (*Andrews, supra,* p. 793, fn. 5.)

The court in *Nissan Motor Corp.* v. *New Motor Vehicle Bd., supra,* 153 Cal.App.3d 109, 116, thus held that since the challenge was to the impartiality of the board based on the participation of dealer members, who have a financial interest in the outcome of dealer-manufacturer disputes (*American Motors Sales Corp.* v. *New Motor Vehicle Bd., supra,* 69 Cal.App.3d 983,

987), proof of actual bias was not required under *Andrews*; the mere appearance of bias is sufficient to support a holding that an adjudicator cannot provide a fair tribunal when that adjudicator has a financial interest or economic stake in the controversy. (See also *Chevrolet Motor Division* v. *New Motor Vehicle Bd., supra,* 146 Cal.App.3d 533, 540.)

In our case, the challenge is not to the impartiality of the dealer members, whose financial interest has been recognized, but to the impartiality of the public members. Appellant offers no evidence of any financial interest these public members have in the outcome of the disputes, nor of any personal interest which would present a "probability or likelihood of the existence of actual bias . . . so great that disqualification . . . is required to preserve the integrity of the legal system," even without proof that such member is actually biased towards a party. (*Andrews, supra,* p. 793, fn. 5.) In the absence of any allegations of actual partiality, we find the simple interaction of the public members with the dealer members on other board business insufficient evidence of bias to overcome the presumption of honesty and integrity of adjudicators. (See *Withrow* v. *Larkin* (1975) 421 U.S. 35, 47 [43 L.Ed.2d 712, 723-724, 95 S.Ct. 1456].)

■ Appellant focuses attention on the participation of the full board, including the dealer members, in the selection of hearing officers to hear dealer-manufacturer disputes. The claim seems to be that there is a financial interest involved, and so the mere appearance of bias is enough to establish that the tribunal is not impartial. Appellant has not articulated just what financial interest is involved. It has, of course, been recognized that the dealer members have a financial stake in the outcome of the dealer-manufacturer disputes. However, appellant has failed to make any showing that the hearing officers share that financial stake or that they have any financial stake of their own. In the case before us, the hearing officer in his statement of economic interest apparently reported that he had *no* reportable economic interests.

In the absence of any evidence at all, we refuse to conjure a financial stake on the part of a hearing officer which might present an appearance of bias sufficient to hold the tribunal unconstitutional. Moreover, appellant has failed to present any facts indicating actual bias of the hearing officer. On the record before us, we simply do not find that the dealer-members' participation in the selection of hearing officers results in the denial of an impartial tribunal for adjudication of dealer-manufacturer disputes in violation of due process.

## III

### Sufficiency of the Evidence

Appellant argues that there is no substantial evidence to support the finding that the dealership standards clause does not require an exclusive showroom. We disagree.

The trial court properly applied the substantial evidence test in this case. (See *Piano* v. *State of California* ex rel. *New Motor Vehicle Bd.* (1980) 103 Cal.App.3d 412, 422 [163 Cal.Rptr. 41].) In cases such as this one where the trial court does not exercise its independent judgment in reviewing an administrative decision, it is performing an essentially appellate function, and the trial court and appellate courts occupy identical positions with regard to the administrative record and the determination of whether the administrative decision is supported by substantial evidence. (*Carmel Valley View, Ltd.* v. *Board of Supervisors* (1976) 58 Cal.App.3d 817, 820 [130 Cal.Rptr. 249].) An abuse of discretion is established in such cases "if the court determines that the findings are not supported by substantial evidence in the light of the whole record." (Code Civ. Proc., § 1094.5, subd. (c); *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 44-45 [112 Cal.Rptr. 805, 520 P.2d 29].)

The challenged finding is that the dealership franchise did not require Fladeboe to provide an exclusive showroom to Isuzu. Central to this finding, of course, is the dealership agreement, which requires, under article III, section A, subdivision 1, that the dealer provide, at the "Dealership Location," "Dealership Facilities" in accordance with the applicable "Dealership Standards." Both the hearing officer and the trial court looked to the definitions provided in the agreement to interpret the terms used in this requirement.

"Dealership Location" is defined as "the business location of Dealer described in the initial paragraph of this Agreement;" that paragraph describes the location as "16-20 Auto Center Drive, Irvine, Ca." "Dealership Facilities" are defined as "the land areas at the Dealership Location and the buildings and improvements erected thereon." "Dealership Standards" are defined as "such reasonable standards as may be established by Distributor for Authorized Isuzu Dealers from time to time under its standard procedures with respect to such matters as dealership facilities, tools, equipment, capitalization, inventories and personnel."

The agreement itself contains no dealership standards requiring a separate showroom; it contains no description of the dealership facilities indicating

the need for a separate building. It does not even limit the dealership location to the address of one building, but rather lists 16-20 Auto Center Drive as the location. Like the board and the trial court, we, too, conclude that the dealership agreement does not contain any express requirement for an exclusive Isuzu showroom.

Appellant presented a great deal of parole evidence to show that the dealership standards established prior to execution of the dealership agreement included an exclusive showroom requirement. The hearing officer admitted this evidence and found that the original letter of intent between the parties did require a separate showroom. However, in his findings he quoted the merger clause of the subsequently executed dealership agreement, which states: "Unless expressly referred to and incorporated herein, this agreement cancels, supersedes and annuls all prior agreements, contracts and understandings between Distributor and Dealer, and there are no representations, promises, agreements or understandings except as described herein, all negotiations, representations and understandings being merged herein." In the absence of any express incorporation of the exclusive showroom requirement in the dealership agreement, this merger clause undercuts any force the earlier showroom requirement could possibly have as a "dealership standard."

Isuzu presented testimony regarding the great importance to it of a separate showroom for its products. The western regional manager testified that the exclusive showroom requirement was part of a national marketing strategy. Although other Isuzu requirements for dealers were fairly small, the separate showroom requirement was one of the biggest parts of a dealer's investment, important for prestige and name identification.

From such evidence the hearing officer found: "Given the purported importance of the separate showroom to Isuzu it would certainly have been the type of agreement that would have been included in the Sales and Service Agreement had Isuzu so desired." Substantial evidence, mixed with common sense, support the conclusion that there was no exclusive showroom requirement either expressly set forth in the agreement or otherwise incorporated as a dealership standard under the merger clause.

## IV

### DISCONTINUANCE OR RELOCATION OF FACILITY

In its letter of termination, Isuzu cited as the specific grounds for termination the failure of Fladeboe to maintain the authorized facility for

the sale of Isuzu products open for business and an attempt to conduct the dealership operations from a facility other than the one authorized by the dealer agreement. Appellant claims error in the rejection of its position that the discontinuance of use of the 20 Auto Center Drive as the exclusive showroom for Isuzu was a "discontinuance of use by Dealer of any of the Dealership Facilities employed . . . by Dealer in the conduct of the dealership operations" *without prior written consent of Isuzu in breach of the dealership agreement and as specified as grounds for termination.*

Under the agreement, "Dealership Facilities" mean the land, areas and buildings at the "Dealership Location." And, as the hearing officer found, the "business location of Dealer" described in the initial paragraph of the agreement was set forth as 16-20 Auto Center Drive. The addresses of Fladeboe's showrooms are 16 Auto Center Drive, 18 Auto Center Drive and 20 Auto Center Drive. The "business location" of Fladeboe included 16, 18 and 20 Auto Center Drive; thus, when the Isuzu showroom was moved from 20 Auto Center Drive to 16 Auto Center Drive, there was no discontinuance of use of the authorized facility, since both addresses are part of the described business location. For the same reason, there was no move of the dealership to a facility other than the one authorized, since all three addresses were authorized under the agreement. Substantial evidence supports the finding that Fladeboe did not move the dealership to a facility other than the one authorized under the agreement, and that there was no breach of the franchise in that regard.

V

FAILURE TO CONSIDER OTHER GROUNDS FOR TERMINATION

██ Appellant argues strenuously that it was error for the board to refuse to consider additional grounds for termination of the franchise. We reject this contention.

Under section 3060, subdivision (a), a franchisor must give written notice to the franchisee and the board "setting forth the specific grounds" for termination of a franchise. Appellant's letter of termination stated: "You have failed to maintain the authorized facility for the sale of Isuzu products open for business and have attempted to conduct your dealership operations from a facility other than the one authorized by the Isuzu Dealer Sales and Service Agreement." The notice makes reference to article V, section A, subdivisions (2)(e) and (i), which set forth the above-specified acts as grounds for termination of the agreement. However, at the administrative

hearing, appellant argued the termination was also based on three other provisions in the agreement.

We conclude the hearing officer and the trial court properly rejected any express reliance on these additional grounds. The Vehicle Code unambiguously requires that notice be given of the *specific grounds* for termination of a franchise. When appellant cited to particular provisions of the agreement as those grounds, it limited its position to those stated grounds. To permit a franchisor to later raise additional unspecified grounds at the hearing would be to deny the franchisee the notice prior to hearing guaranteed under the statute; such denial infringes on the franchisee's right to procedural due process and cannot be allowed. The board's determination was properly limited to the grounds specified in the notice of termination.

This limitation did not render the board's considerations unduly narrow. Appellant stated several times during the hearing that the case was really only about Fladeboe's no longer providing Isuzu with an exclusive showroom. The hearing officer expressly recognized that the crux of the dispute was whether Fladeboe's failure to provide an exclusive Isuzu showroom constituted a breach of the dealership agreement, and, if so, whether such failure to comply constituted good cause for termination of the franchise. It was necessary for him to consider all the terms of the agreement as well as the parole evidence presented by Isuzu before he could reach his determination that the agreement itself did not require an exclusive showroom and that failure to provide such showroom was therefore not a breach of the agreement. These determinations find ample support in the record.

## VI

### CONDITIONAL ORDER

Appellant asks that, in the event we find there was a breach of the franchise agreement, we remand to the board for consideration of a conditional order. The board does indeed have the power to issue a conditional order "for the purpose of assuring performance of binding contractual agreements between franchisees and franchisors or otherwise serving the purposes of this article." (§ 3067.) However, the board did not find that there had been a breach of the franchise agreement on any of the grounds specified in the termination notice, and, based on the substantial evidence to support that determination, we find no abuse of discretion in that decision. We therefore find no need to remand for consideration of a conditional order.

## DISPOSITION

The judgment of the trial court denying the petition for writ of mandate is affirmed.

Hanson (Thaxton), Acting P. J., and Devich, J., concurred.