[Civ. No. 25748. Third Dist. Jan. 7, 1987.]

SONOMA SUBARU, INC., Plaintiff and Appellant, v.
NEW MOTOR VEHICLE BOARD, Defendant and Respondent;
SUBARU OF NORTHERN CALIFORNIA et al., Real Parties in Interest
and Respondents.

**[Opinion certified for partial publication.*]**

---

*Pursuant to rule 976.1 of the California Rules of Court, the opinion is certified for publication with the exception of parts III and V of the Discussion.

COUNSEL

Anderson, Zeigler, Disharoon & Gray, Barbara L. Detrich, David G. Bjornstrom, Cannata, Genovese & Papale, Steven J. Cannata and Judith A. Genovese for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Paul H. Dobson and Ramon M. de la Guardia, Deputy Attorneys General, for Defendant and Respondent.

Bullen, McKone, McKinley, Gay, Keitges & Pach and Carol A. Wieckowski for Real Parties in Interest and Respondents.

OPINION

SIMS, J.—Real parties in interest Subaru of America, Inc. and Subaru of Northern California (Subaru) determined that their dealership, plaintiff Sonoma Subaru, Inc. (Sonoma), was insolvent. Subaru sent Sonoma a statutorily-authorized 15-day notice of intent to terminate Sonoma's dealership franchise. (Veh. Code, § 3060, subd. (a)(2)(C); statutory references are to the Vehicle Code unless otherwise indicated.)[1] Under the controlling statute,

---

[1]Section 3060 provides in full as follows: "Notwithstanding Section 20999.1 of the Business and Professions Code or the terms of any franchise, no franchisor shall terminate or refuse to continue any existing franchise unless all of the following conditions are met: [¶] "(a) The franchisee and the board have received written notice from the franchisor as follows: [¶] (1) Sixty days before the effective date thereof setting forth specific grounds for termination or refusal to continue. [¶] (2) Fifteen days before the effective date thereof setting forth the specific grounds with respect to any of the following: [¶] (A) Transfer of any ownership or interest in the franchise without the consent of the franchisor, which consent shall not be unreasonably withheld. [¶] (B) Misrepresentation by the franchisee in applying for the franchise. [¶] (C) Insolvency of the franchisee, or filing of any petition by or against the franchisee under any bankruptcy or receivership law. [¶] (D) Any unfair business practice after written

Sonoma's protest of the termination had to be filed with defendant New Motor Vehicle Board (Board) within 10 days after receiving the 15-day notice. (§ 3060, subd. (b).) Sonoma filed an untimely protest which the Board refused to consider. Sonoma petitioned the Board to hear its untimely protest but the Board refused. Sonoma then petitioned the trial court for a writ of administrative mandate (Code Civ. Proc., § 1094.5) ordering the Board to hear its protest. The trial court denied the petition.

Sonoma appeals contending: (1) The trial court should have permitted Sonoma's untimely filing; (2) Subaru's statutorily-authorized 15-day notice failed to warn it that its response was due in 10, not 15, days, thus violating due process; (3) the 15-day notice failed to meet statutory requirements for such notices (§ 3060); (4) the Board should have either stricken the 15-day notice or joined the proceeding with a prior franchise-termination proceeding over which the Board had retained jurisdiction; and (5) the Board should have made findings of fact and conclusions of law supporting its refusal to consider the untimely protest. In an unpublished portion of this opinion, we reject contentions (3) and (5). In this published portion, we reject Sonoma's remaining contentions and therefore affirm the judgment.

---

warning thereof. [¶] (E) Failure of the motor vehicle dealer to conduct its customary sales and service operations during its customary hours of business for seven consecutive business days, giving rise to a good faith belief on the part of the franchisor that the motor vehicle dealer is in fact going out of business, except for circumstances beyond the direct control of the motor vehicle dealer or by order of the department. [¶] (3) The written notice shall contain, on the first page thereof, a conspicuous statement which reads as follows: 'NOTICE TO DEALER: You may be entitled to file a protest with the NEW MOTOR VEHICLE BOARD in Sacramento and have a hearing on your protest under the terms of the California Vehicle Code if you oppose this action. It is important that you act promptly.'

"(b) The board finds that there is good cause for termination or refusal to continue, following a hearing called pursuant to Section 3066. The franchisee may file a protest with the board within 30 days after receiving a 60-day notice or within 10 days after receiving a 15-day notice. When a protest is filed, the board shall advise the franchisor that a timely protest has been filed, that a hearing is required pursuant to Section 3066, and that the franchisor may not terminate or refuse to continue until the board makes its findings.

"(c) The franchisor has received the written consent of the franchisee, or the appropriate period for filing a protest has elapsed. [¶] The franchisor shall not modify or replace a franchise with a succeeding franchise if the modification or replacement would substantially affect the franchisee's sales or service obligations or investment, unless the franchisor has first given the board and each affected franchisee notice thereof at least 60 days in advance of the modification or replacement. Within 30 days of receipt of the notice, a franchisee may file a protest with the board and the modification or replacement does not become effective until there is a finding by the board that there is good cause for the modification or replacement. If, however, a replacement franchise is the successor franchise to an expiring or expired term franchise, the prior franchise shall continue in effect until resolution of the protest by the board. In the event of multiple protests, hearings shall be consolidated to expedite the disposition of the issue."

FACTUAL AND PROCEDURAL BACKGROUND

On September 8, 1983, Subaru sent Sonoma a notice of intention to terminate its dealership agreement. The notice stated the primary ground for termination was Sonoma's financial insolvency caused by financial losses and the loss of its "flooring" line of credit under which a lender commits to finance the dealership's purchases of cars from the franchisor. Acting through its attorneys in Los Angeles, Sonoma filed a timely protest with the Board and the matter was resolved. As part of a settlement agreement, Sonoma agreed to furnish Subaru a certified balance sheet showing adequate capitalization.

Sonoma failed to furnish the certified balance sheet as promised. In addition, Sonoma's financial statements continued to reflect losses. As a result, on December 10, 1984, Subaru sent Sonoma a second notice of intention to terminate the dealership agreement. Once again, the notice provided for termination of the dealership agreement within 15 days. Again through its Los Angeles counsel, Sonoma filed a timely protest with the Board. Subaru and Sonoma entered into a second settlement agreement which provided, inter alia, that the parties shall agree upon a public accounting firm to perform an audit of Sonoma and prepare a certified financial statement for Sonoma as of December 31, 1984. The accounting firm was to render an opinion as to whether Sonoma was solvent or insolvent, and if the latter, was to state the appropriate remedial measures to correct the insolvency. If Sonoma proved solvent the termination was to be withdrawn; if insolvent, Sonoma was to be allowed 30 days to effect a cure.

As part of the settlement Subaru undertook not to initiate termination proceedings against Sonoma "on any grounds *other than* insolvency for circumstances arising *prior to* February 5, 1985," the effective date of the settlement agreement. (Italics added.) The Board retained jurisdiction over the matter for purposes of enforcing the settlement agreement until the time Subaru's notice of termination was withdrawn or until Sonoma's dealership agreement was terminated.

On April 1, 1985, Subaru learned that Sonoma had again lost its flooring line of credit. Sonoma did not obtain the reinstatement of, or a new source for, its line of credit for over a month. These developments, combined with consistent financial losses through March of 1985, led Subaru to suspect that as of May, 1985, Sonoma was insolvent.

On May 10, 1985, Subaru sent to Sonoma a *third* notice of intention to terminate the dealership agreement. The notice provided in pertinent part: "Pursuant to the provisions of Section 3060(a)(2)(c) of the California Vehicle

Code and the provisions of Paragraph 11 of the Subaru Dealership Agreement and Section 15.1.2 of the Subaru Dealership Agreement Standard Provisions between your dealership and Subaru of Northern California, Inc. ("SNC"), notice is hereby given to you that *FIFTEEN (15) DAYS* after receipt of this letter by you and by the New Motor Vehicle Board of the State of California, *YOUR SUBARU DEALERSHIP AGREEMENT WILL BE TERMINATED,* unless satisfactory proof is furnished to SNC prior to the expiration of that 15-day time period that the following major deficiency has been remedied. . . ." (Italics in original; fn. omitted.) In a footnote at the bottom of the first page, the notice provided: "NOTICE TO DEALER: You may be entitled to file a protest with the New Motor Vehicle Board in Sacramento and have a hearing on your protest under the terms of the California Vehicle Code if you oppose this action. It is important to act promptly."

Sonoma evidently received the May 10, 1985, termination notice on May 13, 1985. The record does not suggest Sonoma attempted to do as Subaru requested, i.e., to furnish proof its insolvency had been remedied. Instead, on May 28, 1985, 15 days following receipt of the termination notice, Sonoma filed a protest with the Board. The protest was prepared by Sonoma's newly retained San Francisco attorneys.

On May 31, 1985, the Board returned Sonoma's protest explaining in a letter that it was not timely filed because it was filed more than 10 days after Sonoma's receipt of Subaru's notice, in violation of subdivision (b) of section 3060.

On June 13, 1985, Sonoma noticed a motion before the Board to either enforce the prior settlement agreement (concluding the December 1984 proceeding) and strike or join the subsequent termination proceeding, or in the alternative to permit untimely filing of the May 1985 termination protest.

The Board replied by letter dated June 14, 1985, that Sonoma's new attorneys had failed to file a substitution of attorneys and thus were not counsel of record. The Board also noted that the prior settlement agreement was now irrelevant because it did not pertain to Sonoma's financial condition after December 31, 1984. The Board concluded because no timely protest was filed to the May 1985 termination (premised on Sonoma's post-1984 financial condition) it was effective and the issue of Sonoma's solvency in 1984 was moot.

On June 26, 1985, Subaru filed a substitution of attorneys and noticed a motion to file its untimely protest effective May 28, 1985. In support of the motion Sonoma submitted its counsel's declaration providing in pertinent part that upon reviewing the May 10, 1985, termination notice she was

of the belief Sonoma had 15 days to file a protest. The declaration also noted that counsel had been engaged in the preparation of legal materials for another client and that the law firm had been recently formed, effective May 1, 1985, and had moved to new offices on April 29, 1985. Law books were arriving sporadically, no permanent staff had been hired, and counsel's two partners were extensively involved in other work.

Sonoma also filed the declaration of its president, Robert Bohna, which provided in pertinent part that he was surprised by the May 1985 termination because he thought the prior settlement agreement would resolve the matter of Sonoma's insolvency. Bohna declared that in reading Subaru's notice he believed he had 15 days in which to file a protest with the Board. He decided not to consult his prior attorneys because they were located in Los Angeles and he wanted local counsel in order to minimize his expenses.

Sonoma also suggested Subaru's 15-day notice was so vague and misleading as to deny it due process of law. At the hearing Sonoma cited several cases from other contexts in which inadvertence of counsel was held to be sufficient cause for a late filing. The administrative law judge (ALJ) distinguished those cases stating that the Legislature had provided the short filing deadline in order to protect the franchisor. On July 15, 1985, the Board denied Sonoma's motion. The trial court denied Sonoma's petition for writ of administrative mandate (Code Civ. Proc., § 1094.5) and Sonoma appeals.

DISCUSSION

I

Sonoma urges that we imply a "good cause" exception to section 3060's 10-day filing deadline. We decline the invitation because to do so would frustrate the intent of the Legislature as revealed in the statutory scheme of which section 3060 is a part.

We begin with rules of statutory interpretation. The aim of statutory construction should be the ascertainment of legislative intent so that the purpose of the law may be effectuated; a statute should be construed with reference to the entire statutory scheme of which it forms a part in such a way that harmony be achieved among the parts; and courts should give effect to statutes according to the usual, ordinary import of the language employed in framing them. (*In re Head* (1986) 42 Cal.3d 223, 232-233 [228 Cal.Rptr. 184, 721 P.2d 65].)

We begin, as we must, with the language of section 3060. (*In-Home Supportive Services* v. *Workers' Comp. Appeals Bd.* (1984) 152 Cal.App.3d 720, 734 [199 Cal.Rptr. 697]; *Nunez* v. *Superior Court* (1983) 143 Cal.App.3d 476, 480 [191 Cal.Rptr. 893].) Subdivision (b) of section 3060 says a franchisee "may file a protest with the board within . . . 10 days after receiving a 15-day notice." The statute provides no exception for "good cause." The larger context of the statute reinforces the conclusion no "good cause" exception should be implied. Thus, the section establishes a general rule that franchises shall be terminated only upon prior notice of 60 days. (§ 3060, subd. (a)(1).) However, with respect to certain enumerated grounds the required prior notice is reduced substantially from 60 to 15 days. (§ 3060, subd. (a)(2).) As one would expect, the shorter notice is permitted only for particularly serious disruptions of the franchisor-franchisee relationship: sale of the franchise, misrepresentations in applying for the franchise, insolvency or bankruptcy of the franchisee, unfair business practices, or the cessation of business operations. (*Ibid.*) The Legislature could readily conclude that these disruptions, being particularly serious, justified swifter action by the franchisor.

The Legislature's concern with swift action is revealed, as well, in subdivision (b) of the statute which provides, as a general rule, that where a franchisor serves a 60-day notice a protest may be filed with the Board within 30 days. For the events warranting a 15-day notice, however, the Legislature has provided a special, shorter period of 10 days within which a protest must be filed.

The structure of section 3060 thus reveals the Legislature has gone out of its way to *shorten* the time in which a franchisor can react to its franchisee's insolvency. We cannot, by judicial fiat, extend what the Legislature has been careful to circumscribe. (See *Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].)

Nor can we graft a "good cause" exception onto the 10-day time limit for another reason. In section 3066, the Legislature has established rules governing Board hearings on termination protests. Upon receiving a notice of protest, the Board is required to enter an order fixing the place and time of a hearing, which shall be within 60 days of the order. (§ 3066, subd. (a).). The Board is entitled to accelerate or postpone the hearing date from that initially scheduled upon a showing of "good cause." (*Ibid.*) For that purpose, "good cause" is expressly defined as including, but not limited to, "the effects upon, and any irreparable harm to, the parties or interested persons or groups if the request for a change in hearing date is not granted." (*Ibid.*) Section 3066 demonstrates that the Legislature knows how to interrupt its termination-dispute-resolution process for "good cause" when it wants to do so. The absence of a similar "good cause" exception from the 10-day deadline suggests the Legislature had a different intention. " ' "Where a statute, with reference to one subject contains a given provision, the omission of such

provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed." ' " (*People* v. *Drake* (1977) 19 Cal.3d 749, 755 [139 Cal.Rptr. 720, 566 P.2d 622], quoting *People* v. *Valentine* (1946) 28 Cal.2d 121, 142 [169 P.2d 1].)

■ Our result is consistent with sound policy as well. The Legislature could reason that not all franchise terminations would be contested before the Board. Where no protest of the termination is filed within the allotted time, the Legislature's obvious intent is to let the franchisor treat the termination as final and effective. Thus, subdivision (c) of section 3060 provides a condition of termination of a franchise is satisfied where, "The franchisor has received the written consent of the franchisee, *or the appropriate period for filing a protest has elapsed.*" (Italics added.) Sanctioning late filings would undercut that finality and create uncertainty in the minds of franchisors as to whether they may treat their relationship with unsatisfactory franchisees as concluded. We conclude the Legislature did not intend that the 10-day filing deadline be extended.

## II

■ Sonoma next contends Subaru's May 10, 1985, termination notice is misleading and vague. Sonoma asserts the Board's reliance on that notice to declare Sonoma's termination protest untimely deprived it of due process of law. ■ ■■■ ■ We disagree.[2]

Neither respondent nor real party in interest has focused on the roles played by government and private parties under section 3060. The statute permits one private party (a franchisor) to terminate a private contractual relationship with another party (a franchisee) provided sufficient notice is given by one party to the other. Government plays a role in the termination only if a franchisee invokes an administrative process by filing a timely

---

[2]The trial court's review of the Board's factual determinations is pursuant to the substantial evidence test. (*American Isuzu Motors, Inc.* v. *New Motor Vehicle Bd.* (1986) 186 Cal.App.3d 464, 474 [230 Cal.Rptr. 769]; see *Piano* v. *State of California* ex rel. *New Motor Vehicle Bd.* (1980) 103 Cal.App.3d 412, 422 [163 Cal.Rptr. 41].) In cases such as this where the trial court does not exercise its independent judgment in reviewing an administrative decision, it is performing essentially an appellate function and the trial court and appellate courts occupy identical positions with regard to the administrative record and the determination of whether the administrative decision is supported by substantial evidence. (*American Isuzu, supra,* at p. 474; *Carmel Valley View, Ltd.* v. *Board of Supervisors* (1976) 58 Cal.App.3d 817, 820 [130 Cal.Rptr. 249].) This limitation does not apply to resolution of questions of law where the facts are undisputed. In such cases, as in other instances involving matters of law, the appellate court is not bound by the trial court's decision, but may make its own determination. (*Evans* v. *Unemployment Ins. Appeals Bd.* (1985) 39 Cal.3d 398, 407 [216 Cal.Rptr. 782, 703 P.2d 122].)

protest with the Board. In the absence of a protest, the termination of the franchise is accomplished wholly by private action.

Sonoma asserts it is entitled by constitutional guaranties of due process of law to receive fair notice of its right to protest to the Board. However, the Board proceeding is analogous to a judicial remedy in the sense that the Board merely reviews the acts of the franchisor for statutory compliance. Since the private franchisor, not the Board, is terminating the franchise, it is far from clear that Sonoma has any constitutional due process right to notice of its potential rights of review by the Board. Nonetheless, the issue is a wormy apple that we will not bite into on our own volition. Rather, we shall assume for purposes of argument due process requires that Sonoma receive fair notice of its right to protest to the Board.

Subdivision (a)(3) of section 3060 states explicitly what the subject notice must say and where the notice must appear. Subaru's notice to Sonoma complied with the statutory command. Sonoma appears to attack the notice on two grounds: (1) that the statute fails to give fair notice because it fails to tell a franchisee it has only 10 days to file a protest and (2) that notice of the right to file a protest is misleading because it appears in conjunction with a 15-day notice, thereby seducing the franchisee into believing it has 15 days to protest. Neither contention has merit.

The first contention is an attack on the statute. ■ " 'In considering the constitutionality of a legislative act we presume its validity, resolving all doubts in favor of the Act. Unless conflict with a provision of the state or federal Constitution is clear and unquestionable, we must uphold the Act. [Citations.]' " (*County of Sonoma* v. *State Energy Resources Conservation etc. Com.* (1985) 40 Cal.3d 361, 368 [220 Cal.Rptr. 114, 708 P.2d 693], quoting *California Housing Finance Agency* v. *Elliott* (1976) 17 Cal.3d 575, 594 [131 Cal.Rptr. 361, 551 P.2d 1193].)

■ "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (*Mullane* v. *Central Hanover T. & B. Co.* (1950) 339 U.S. 306, 314 [94 L.Ed. 865, 873, 70 S.Ct. 652].) Notice procedures should be evaluated not in a hypertechnical sense but according to common experience. (See *McMaster* v. *City of Santa Rosa* (1972) 27 Cal.App.3d 598, 602 [103 Cal.Rptr. 749], followed in *Atkins* v. *Kessler* (1979) 97 Cal.App.3d 784, 793 [159 Cal.Rptr. 231].) What is proper notice in a given situation must be determined on a case-by-case basis. "[T]he precise procedures necessary to prevent the arbitrary deprivation of a constitutionally protected interest vary 'with the

subject-matter and the necessities of the situation.' " (*In re Bye* (1974) 12 Cal.3d 96, 103 [115 Cal.Rptr. 382, 524 P.2d 854], quoting *Moyer* v. *Peabody* (1909) 212 U.S. 78, 84 [53 L.Ed. 410, 416, 29 S.Ct. 235].)

■ The statutory notice plainly tells a franchisee of its right to protest. It also says, "It is important that you act promptly." Although the notice does not expressly state the 10-day filing deadline, such is not constitutionally required in light of the composition of the class receiving the notice: experienced franchisees presumably familiar with the fundamentals of franchising and franchise terminations. In light of the extensive regulation of automobile franchises (see *BMW of North America, Inc.* v. *New Motor Vehicle Bd.* (1984) 162 Cal.App.3d 980 [209 Cal.Rptr. 50]) it can reasonably be presumed that a franchisee would have some familiarity with the basics of the Board and its operations, including the fact that franchise terminations are governed by section 3060. If Sonoma was unsure of that fact, the notice itself told Sonoma it was sent pursuant to section 3060. In light of the notice's command to "act promptly," we do not think it unreasonable to require a franchisee to find out what the filing deadline is. Thus, assuming Sonoma was entitled by due process of law to fair notice, we conclude section 3060 prescribes constitutional notice.

Sonoma also asserts the notice of right to protest was misleading because it was contained in Subaru's notice of franchise termination that expressly mentioned a 15-day deadline. We do not think so.

The 15-day notice is also prescribed by section 3060, although its precise language is not mandated. (See fn. 1, *ante.*) In any event, Subaru's 15-day notice stated that proof of cure of the defect in the franchise was to be submitted to Subaru, not the Board. Moreover, the notice of Sonoma's right to protest to the Board was separately stated in a footnote. The two notices simply do not permit a reasonable inference that the 15-day deadline controls the time within which to protest. Moreover, this was the *third* such notice Sonoma had received; it was not confused by the first two, because it filed timely protests. We conclude the subject notice was not misleading.

*Atkins* v. *Kessler, supra,* 97 Cal.App.3d 784, relied on by Sonoma is distinguishable in various respects. The facts of *Atkins* were egregious: the notice found defective was a notice of delinquency under a special tax assessment. The notice warned that foreclosure proceedings would be commenced under a bond but it did not warn that the homeowner's home could be sold out from under him. (P. 794.) Thus, the adverse action itself was being concealed. The homeowner faced the loss of his home, but that is precisely what the notice did not tell him. Here, by contrast, the notice told Sonoma

exactly what adverse action was being threatened: the dealership was to be terminated within 15 days unless conditions were met. Moreover, the notice told Sonoma to act promptly and it specified an opportunity to present its objections to the Board. The notice's only omission was a procedural provision of law—a statutory filing deadline. However, the notice did mention that the hearing was available under the terms of the Vehicle Code; had Sonoma wished to avail itself of its opportunity for a hearing it presumably could have consulted that code.

*Atkins* is distinguishable, as well, because it involved a homeowner who presumably had not received delinquency notices in the past and was unfamiliar with them. Here, the termination notice was Sonoma's third in two years and was framed in language nearly identical to its predecessors. The recipient was not a homeowner but an experienced commercial franchisee.

On the facts of this case, with an experienced franchisee receiving his third virtually identical notice, warning of an impending termination of his franchise under section 3060 and suggesting he act promptly to request a Board hearing under the terms of the Vehicle Code, we cannot say Sonoma was insufficiently alerted to the impending action or to its opportunity to object to it. (*Mullane* v. *Central Hanover T. & B. Co., supra,* 339 U.S. at p. 314 [94 L.Ed. at p. 873].) We hold Subaru's notice constitutional in the circumstances. (*In re Bye, supra,* 12 Cal.3d at p. 103.)

III*

. . . . . . . . . . . . . . . . . . . . . . .

IV

Sonoma next contends Subaru should have filed its May 1985 allegation of insolvency in the December 1984 proceeding. Sonoma contends the Board should have stricken the May 1985 filing or joined it with the December proceeding. Sonoma's argument fails.

Sonoma contends that striking or joinder was necessary in order to avoid a multiplicity of proceedings on the same issue. As support for its contention Sonoma relies on section 3060, subdivision (c), which provides in pertinent part that "In the event of multiple protests, *hearings* shall be consolidated to expedite the disposition of the issue." (Italics added.)

---

*See footnote *ante,* page 13.

The first flaw in Sonoma's argument is that it takes the statutory language out of context. Section 3060, subdivision (c) is intended to consolidate hearings on multiple *concurrent* protests filed by different franchisees. (See fn. 1, *ante*.) The statute does not purport to require consolidation of successive protests from the same franchisee. Indeed, applying the statute in the context of this case is impossible because the hearing on the December protest has already been held and there is nothing to consolidate the May hearing with.

The second flaw in Sonoma's argument is that the issues in the December 1984 and May 1985 termination proceedings are not the same. Sonoma's financial condition in May of 1985 is affected by factors arising after December of 1984; thus the determination of solvency at the later date necessarily encompasses different issues. Sonoma cites no authority requiring the Board to join together two proceedings on separate issues. Sonoma's contention must fail.

V*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

DISPOSITION

The judgment is affirmed.

Evans, Acting P. J., and Blease, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 1, 1987. Broussard, J., was of the opinion that the petition should be granted.

---

*See footnote *ante,* page 13.