[No. C000530. Third Dist. Mar. 30, 1988.]

CHAMPION MOTORCYCLES, INC., Plaintiff and Appellant, v.
NEW MOTOR VEHICLE BOARD, Defendant and Respondent;
YAMAHA MOTOR CORPORATION et al., Real Parties in Interest
and Respondents.

**COUNSEL**

Chris C. Vaughn and Daniel Patterson for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, and Faith Geoghegan, Deputy Attorney General, for Defendant and Respondent.

Forrest A. Plant, Diepenbrock, Wulff, Plant & Hannegan, Bruce L. Ishimatsu, Kelley, Drye & Warren, Michael J. Flanagan and Pilot & Spar for Real Parties in Interest and Respondents.

**OPINION**

**PUGLIA, P. J.**—Appellant Champion Motorcycles, Inc., doing business as Champion Honda/Yamaha (Champion), appeals from the judgment of the trial court denying its petition for writ of administrative mandamus. (Code

Civ. Proc., § 1094.5.) By that petition, Champion sought to overturn the decision of the respondent New Motor Vehicle Board (Board) which had overruled Champion's protests filed against real party in interest Yamaha Motor Corporation, U.S.A. (Yamaha). The protests were based on Yamaha's actions in (1) establishing a new franchise authorizing real party in interest Renix Corp., doing business as Newport Vespa/Riva (Newport), to sell Yamaha Riva motor scooters, and (2) modifying Champion's franchise agreement to preclude Champion from obtaining the Yamaha Riva motor scooter line. On appeal, Champion contends the trial court improperly applied the substantial evidence standard of review and improperly relied on the doctrine of laches to support its judgment. We shall affirm.

In September 1982, Champion entered into a contract to purchase a Honda/Yamaha retail motorcycle outlet in Costa Mesa from Award Motors, Inc. At about the same time, Yamaha introduced a new merchandise line of motor scooters called "Yamaha Riva." Yamaha notified both Award and Champion that neither of them would be eligible to carry the Riva line. Effective September 27, 1982, Yamaha established a new franchise with Newport to sell Riva motor scooters. Yamaha then perfected its franchise agreement with Champion on October 13, 1982. The Newport franchise was apparently located within a radius of ten miles of the Champion franchise.[1]

On November 23, 1983, Champion filed an "establishment protest" with the Board, contending that Yamaha failed to give notice of its establishment of a new franchise and that there was good cause to preclude the establishment of the Newport franchise, pursuant to Vehicle Code section 3062.[2] (All further statutory references to sections of an undesignated code are to the

---

[1] The record does not indicate the distance in September 1982 between the locations of the Champion and Newport franchises. However, in November 1983, Newport moved to within a block of Champion and in September 1984 Champion moved about two blocks farther away to a distance of about seven-tenths of a mile from Newport.

[2] Section 3062 provides in pertinent part: "[I]f a franchisor seeks to enter into a franchise establishing an additional motor vehicle dealership within a relevant market area where the same line-make is then represented, or seeks to relocate an existing motor vehicle dealership, the franchisor shall, in writing, first notify the board and each franchisee in that line-make in the relevant market area of the franchisor's intention to establish an additional dealership or to relocate an existing dealership within or into that market area. Within 20 days of receiving that notice or within 20 days after the end of any appeal procedure provided by the franchisor, any such franchisee may file with the board a protest to the establishing or relocating of the dealership. . . . When such a protest is filed, the board shall inform the franchisor that a timely protest has been filed, that a hearing is required pursuant to Section 3066, and that the franchisor shall not establish or relocate the proposed dealership until the board has held a hearing as provided in Section 3066, nor thereafter, if the board has determined that there is good cause for not permitting the dealership. In the event of multiple protests, hearings may be consolidated to expedite the disposition of the issue."

Vehicle Code.) "Section 3062 limits the ability of a franchisor to establish or relocate a dealership within an area where the same line-make is already represented. In doing so the section utilizes the term 'relevant market area' which is in turn defined in section 507 as being 'any area within a radius of 10 miles from the site of a potential new dealership.' Thus under section 3062, any franchisee within 10 miles of the site of a proposed new or relocated dealership of the same line-make may protest such proposed action. At the hearing on the protest the question is whether the existing franchisee establishes good cause for not allowing the establishment or relocation of the additional dealer within the relevant market area, and section 3063 sets forth the factors which are to be considered by the Board." (*BMW of North America Inc.,* v. *New Motor Vehicle Bd.* (1984) 162 Cal.App.3d 980, 989 [209 Cal.Rptr. 50].)

On December 7, 1983, Champion filed a "modification protest," pursuant to section 3060, contending that Yamaha modified Champion's franchise by deleting the Riva line from the franchise agreement without good cause and, again, that Yamaha failed to give notice of the modification. Section 3060 ". . . precludes a franchisor from modifying or replacing a franchise with a succeeding franchise if the modification or replacement would substantially affect the franchisee's sales or service obligations or investment, unless the franchisor complies with certain procedural provisions and in the event of a protest the Board finds good cause for the modification or replacement. Section 3061 provides the factors to be considered by the Board in determining whether good cause has been established for modifying, replacing, terminating, or refusing to continue a franchise."[3] (*BMW of North America, supra,* 162 Cal.App.3d at p. 989.) The protesting franchisee has the initial burden of proving the modification would substantially affect the franchisee's sales or service obligations or investment; the burden then shifts to the franchisor to prove good cause for the modification. (§§ 3060; 3066, subd. (b).)

The establishment and modification protests were consolidated and a hearing held in February 1985 before an administrative law judge (ALJ).

[3] Section 3060 provides in pertinent part: "The franchisor shall not modify or replace a franchise with a succeeding franchise if the modification or replacement would substantially affect the franchisee's sales or service obligations or investment, unless the franchisor has first given the board and each affected franchisee notice thereof at least 60 days in advance of the modification or replacement. Within 30 days of receipt of the notice, a franchisee may file a protest with the board and the modification or replacement does not become effective until there is a finding by the board that there is good cause for the modification or replacement. If, however, a replacement franchise is the successor franchise to an expiring or expired term franchise, the prior franchise shall continue in effect until resolution of the protest by the board. In the event of multiple protests, hearings shall be consolidated to expedite the disposition of the issue."

The ALJ issued a proposed decision in August 1985. As to the modification protest, the ALJ found that Yamaha did modify Champion's franchise by deleting the Riva line from the agreement. However, the ALJ found that Champion failed to prove the modification had a substantial effect on its sales or service obligations or investment. Moreover, the ALJ found Yamaha had good cause to modify the franchise agreement. As to the establishment protest, the ALJ found Champion failed to prove good cause existed to disallow the establishment of the Newport franchise. The ALJ also found that Yamaha had good cause for its failure to give notice of modification and establishment, and further that Champion's protests were barred by laches because it did not file its protests for at least one year after it learned of Yamaha's actions, during which time Yamaha and Newport substantially changed their positions. The ALJ denied both the establishment and modification protests. The Board adopted the ALJ's findings and decision on September 4, 1985.

The trial court denied Champion's petition for writ of mandamus, finding that the substantial evidence test was the proper standard of review, that substantial evidence supported the Board's findings and that the Board did not err in applying laches.

Champion contends the trial court erroneously utilized the substantial evidence test to review its modification protest, rather than the independent judgment test. Champion concedes the substantial evidence test is proper when a trial court reviews the Board's denial of an establishment protest. (See Piano v. State of California ex rel. New Motor Vehicle Bd. (1980) 103 Cal.App.3d 412, 422 [163 Cal.Rptr. 41].) However, Champion argues that different rights are implicated in a modification protest and therefore the more searching independent judgment test applies. We disagree.

On petition for writ of mandamus to review the final decision of an administrative agency, the trial court must determine whether there has been a prejudicial abuse of discretion. In cases where it is claimed the findings are not supported by the evidence, if the trial court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the findings are not supported by the weight of the evidence; in all other cases, the trial court determines whether the findings are supported by substantial evidence in light of the whole record. (Code Civ. Proc., § 1094.5, subds. (b), (c).)

The trial court is authorized to exercise its independent judgment on the evidence where the administrative agency is of legislative origin and its

decision affects a fundamental vested right. (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34-35 [112 Cal.Rptr. 805, 520 P.2d 29].) The Board is of legislative origin. (*BMW of North America Inc.* v. *New Motor Vehicle Bd., supra,* 162 Cal.App.3d at p. 985; *American Motors Sales Corp.* v. *New Motor Vehicle Bd.* (1977) 69 Cal.App.3d 983, 986 [138 Cal.Rptr. 594].) Courts must decide on a case-by-case basis whether an administrative decision or class of decisions substantially affects a fundamental vested right. (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 144 [93 Cal.Rptr. 234, 481 P.2d 242].) To determine whether a right is fundamental and vested, we look to either of two factors: "(1) the character and quality of its economic aspect; (2) the character and quality of its human aspect." (*Interstate Brands* v. *Unemployment Ins. Appeals Bd.* (1980) 26 Cal.3d 770, 780 [163 Cal.Rptr. 619, 608 P.2d 707]; see also *Strumsky, supra,* at p. 45; *Bixby supra,* at pp. 144-145.)

Recently, the Court of Appeal considered the scope of review of a section 3060 termination decision. (*British Motor Car Distributors, Ltd.* v. *New Motor Vehicle Bd.* (1987) 194 Cal.App.3d 81 [239 Cal.Rptr. 280], [review den., Nov. 10, 1987].) In *British Motor,* the franchisor terminated the franchise agreement pursuant to section 3060. The Board found that the franchisor acted without good cause and therefore ordered the franchise reinstated. However, the trial court applied the independent judgment test and reversed. (*Id.,* at pp. 85, 89.) The appellate court held that the Board's decision did not affect a fundamental vested right of the franchisor and therefore the trial court erroneously applied the independent judgment test. (*Id.,* at p. 90.)

The *British Motor* court explained: "It has been repeatedly held that the preservation of purely economic interests does not affect the fundamental vested rights of the petitioner." (194 Cal.App.3d at p. 90, citing *Northern Inyo Hosp.* v. *Fair Emp. Practice Com.* (1974) 38 Cal.App.3d 14, 22-23 [112 Cal.Rptr. 872]; *Mobil Oil Corp.* v. *Superior Court* (1976) 59 Cal.App.3d 293, 305 [130 Cal.Rptr. 814]; *Mueller* v. *MacBan* (1976) 62 Cal.App.3d 258, 273 [132 Cal.Rptr. 222].) The franchisor had argued that the Board's decision affected its freedoms of contract and association. The appellate court pointed out that those freedoms have long been subject to governmental regulation. "It is far too late in the day to assert that a business enterprise has a 'fundamental vested right' to conduct business free from reasonable governmental regulation. [Citations.]" (194 Cal.App.3d at p. 90.)

Two other appellate courts have applied the substantial evidence test to review section 3060 termination decisions, albeit without discussion. (*Sonoma Subaru, Inc.* v. *New Motor Vehicle Bd.* (1987) 189 Cal.App.3d 13, 22,

fn. 2 [234 Cal.Rptr. 226]; *American Isuzu Motors, Inc.* v. *New Motor Vehicle Bd.* (1986) 186 Cal.App.3d 464, 474 [230 Cal.Rptr. 769].)

 Champion argues Yamaha's modification of the franchise agreement affected a fundamental vested right because (1) the economic aspect of the modification was enormous as it caused a substantial loss in potential earnings and a simultaneous substantial increase in expenditures, and (2) the human aspect was equally enormous because all of Champion's debts were secured by the personal property of Champion's corporate officers and principals.[4] We reject this analysis. The right affected by the deletion of the Riva line from Champion's franchise was purely economic. That is, according to Champion, the modification caused an increase in expenditures and a decrease in revenues. The nature of the right affected is not altered by the fact that the modification extended beyond the corporate coffers to the principal's pockets. The right affected is no different than when the Board precludes a franchisor from terminating a franchise, thus causing lost revenues to the franchisor, as was the case in *British Motor*. We concur with the analysis of the Court of Appeal in that case.[5]

Further, we disagree with Champion's contention that the right affected in a modification protest is substantially different than in an establishment protest. When the franchisor establishes a new franchise within the same market area as an existing franchise, the senior franchisee's right to operate without unfair competition is affected. That right is merely the interest of the franchisee in its economic well-being. When the franchisor modifies the franchise agreement by withdrawing a line of merchandise, the very same interest—economic well-being—is affected.

Finally, Champion misplaces its reliance on *Interstate Brands* v. *Unemployment Ins. Appeals Bd., supra,* 26 Cal.3d 770. There, the court held an administrative decision requiring an employer to make contributions to the unemployment insurance fund on behalf of striking employees implicated a fundamental vested right of the employer. (*Id.,* at pp. 773-775.) The court distinguished cases recognizing that a purely economic interest is neither fundamental nor vested by explaining the *Interstate Brands* employer was forced to contribute to the unemployment insurance fund by the administrative decision. (*Id.,* at p. 781, fn. 7.) In contrast, here, Champion has not been coerced by administrative adjudication.

---

[4] Champion also contends the modification of its franchise agreement deprived it of the opportunity to carry on a lawful trade or business. This contention is gainsaid by the fact that Champion has continued to operate its business to this very day even though it has been without the Riva line of motor scooters.

[5] We do not here consider the nature of the right affected when a franchisee's entire franchise is terminated by the franchisor under section 3060.

Champion finally contends that had the trial court applied the independent judgment test it would not have denied Champion's modification protest because the weight of the evidence favored Champion.[6] We need not reach this issue as we conclude the trial court was correct in applying the substantial evidence test. Champion does not contend there is no substantial evidence to support the judgment.

Champion contends the trial court erroneously approved the Board's reliance on the equitable doctrine of laches to support its decision overruling Champion's modification and establishment protests. However, the Board relied on laches as an alternative theory for the denial of Champion's protests. The Board's principal rationale was that Champion failed to meet its burden of proof as to either protest. Champion does not contend there was no substantial evidence to support the Board's findings that (1) Champion was not substantially affected by the modification, and (2) Yamaha had good cause to modify Champion's franchise. Nor does Champion challenge the Board's finding that Champion failed to prove good cause to disallow the establishment of the Newport franchise. Thus, even if the trial court erred in sustaining the Board's reliance on laches, the judgment must nevertheless be affirmed.[7]

[6] Champion also argues the Board's decision denying the modification protest was not supported by the findings. Champion does not provide any analysis for this contention which in any event is wrong. The Board adopted the findings of the ALJ. The ALJ found (1) the modification did not substantially affect Champion's sales, service obligations or investment and, in any event, (2) Yamaha had good cause to modify the franchise agreement. These findings amply support the denial of Champion's modification protest. (See § 3060.)

[7] Champion contends the Board exceeded its jurisdiction in finding laches because the Board is an agency of legislative, rather than constitutional, origin and therefore may not enforce equitable principles, absent express constitutional or statutory authorization. Champion may be correct. "It is fundamental that an administrative agency has only such power as has been conferred upon it by the constitution or by statute and an act in excess of the power conferred upon the agency is void. [Citations.]" (*BMW of North America Inc.* v. *New Motor Vehicle Bd., supra,* 162 Cal.App.3d at p. 994.) Laches may be asserted only in a suit in equity. (7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 14, p. 5240.)

Champion argues that the separation of powers doctrine permits only those administrative agencies with constitutionally granted judicial powers to exercise equitable jurisdiction. In *Consumers Lobby Against Monopolies* v. *Public Utilities Com.* (1979) 25 Cal.3d 891 [160 Cal.Rptr. 124, 603 P.2d 41], a sharply divided Supreme Court permitted the Public Utilities Commission (PUC) to grant attorneys fees under its equitable jurisdiction in reparation cases. (*Id.,* at pp. 905-909, 917-920.) The court's decision was premised in part on the Constitution's grant of broad quasi-judicial powers to the PUC. (*Id.,* at pp. 905-906.) On the other hand, the court held the PUC could not award attorney fees in its quasi-legislative ratemaking function. (*Id.,* at pp. 909-910, 916-917.) The Court of Appeal recently applied this separation of powers analysis to hold that the Department of Social Services, an agency of legislative origin, may not apply the doctrine of equitable estoppel in exercising its adjudicatory function. However, the Supreme Court granted review. (*Lentz* v. *McMahon* (1986) [review granted (S.F. 25123), Feb. 26, 1987] reprinted to permit tracking in 197 Cal.App.3d 445, 452-455 [231 Cal.Rptr. 622].) To the extent the analysis in *Lentz* is correct, the Board, also an

The judgment is affirmed.

Blease, J., and Deegan, J.,* concurred.

---

agency of legislative origin, exceeded its jurisdiction by relying on the equitable doctrine of laches.

 The Board cites a number of cases for the proposition that estoppel may be asserted against governmental entities in administrative cases. (*Fredrichsen* v. *City of Lakewood* (1971) 6 Cal.3d 353, 357 [99 Cal.Rptr. 13, 491 P.2d 805]; *U.S. Fid. & Guar. Co.* v. *State Bd. of Equal.* (1956) 47 Cal.2d 384, 388-389 [303 P.2d 1034]; *House* v. *State of California* (1981) 119 Cal.App.3d 861, 873-879 [174 Cal.Rptr. 279].) However, each of these cases involves the assertion of estoppel in the trial court, not before an administrative agency. Moreover, none of the cases considers the issue whether agencies of legislative origin have equitable jurisdiction. Thus, the cases are inapposite.

 * Assigned by the Chairperson of the Judicial Council.