[No. H009979. Sixth Dist. Dec. 2, 1993.]

AUTOMOTIVE MANAGEMENT GROUP, INC., Plaintiff and Appellant,
v.
NEW MOTOR VEHICLE BOARD, Defendant and Respondent;
MITSUBISHI MOTOR SALES OF AMERICA, INC., Real Party in
Interest and Respondent.

## COUNSEL

Robertson, Alexander, Luther, Esselstein, Shiells & Wright and Harold C. Wright for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Floyd D. Shimomura, Assistant Attorney General, Cathy A. Christian, Susan P. Underwood and Geoffrey L. Granbill, Deputy Attorneys General, for Defendant and Respondent.

Gibson, Dunn & Crutcher, Elizabeth A. Grimes and Alicia J. Bentley for Real Party in Interest and Respondent.

## OPINION

**ELIA, J.**—Automotive Management Group, Inc. (AMG) protested its termination as a franchised dealer of respondent/real party in interest Mitsubishi Motor Sales of America, Inc. (MMSA). AMG'S protest was rejected because it was untimely. AMG petitioned for a writ of mandate. The trial court found that substantial evidence supported the administrative law judge's (ALJ) determination that AMG's protest was untimely. It therefore denied AMG's mandate petition. We reverse and remand the matter for a hearing before respondent the New Motor Vehicle Board (Board).

*Facts and Procedural Background*

In 1988, AMG became a franchised Mitsubishi dealer. AMG operated in Santa Cruz, California under the name Santa Cruz Mitsubishi. AMG's relationship with MMSA was troubled. This was because AMG failed to maintain sufficient lines of credit (called "flooring") to buy vehicles from MMSA as required by its franchise agreement.

In a January 9, 1990, letter, MMSA notified AMG of MMSA's intention to terminate the franchise because of AMG's failure to maintain adequate "flooring." After AMG obtained an improved (but still insufficient) flooring commitment, MMSA rescinded the termination notice and, on April 16, 1990, the parties executed a six-month conditional interim sales and service agreement (Interim Agreement). This agreement gave AMG six more months in which to fully comply with MMSA's flooring requirements.

By October 1990, AMG's flooring still did not comply with the requirements of the Interim Agreement (which was a condition precedent to preserving the franchise relationship). Because of the continued flooring problems and because the Interim Agreement was due to expire on October 16, 1990, MMSA decided to discontinue AMG's franchise. Accordingly, by letter dated October 18, 1990, MMSA sent AMG a second notice of termination, by registered mail, effective January 21, 1991. AMG and the Board received the termination notice on October 22, 1990.

California Vehicle Code section 3060, subdivision (a) specifies the required form and content of a termination notice and the procedure by which notice must be given. Section 3060, subdivision (b) authorizes the franchisee to protest a termination notice. It provides, in pertinent part, that "The franchisee may file a protest with the board within 30 days after receiving a 60-day notice or within 10 days after receiving a 15-day notice. When a protest is filed, the board shall advise the franchisor that a timely protest has been filed, that a hearing is required pursuant to Section 3066, and that the franchisor may not terminate or refuse to continue until the board makes its findings."

In late September 1990, AMG had begun negotiations with North Bay Ford Lincoln-Mercury for North Bay to purchase the assets of the Mitsubishi dealership from AMG. After AMG received the notice of termination, it focused its efforts on the negotiations with North Bay for the buy/sell of the franchise, rather than focusing on resolving its flooring problem.

In the months following receipt of the termination notice, AMG's principal, Bruce Canepa, was in regular contact with MMSA's agents and was

aware that MMSA viewed the notice of termination as effective. At no time did Mr. Canepa, or anyone acting on behalf of AMG, indicate to MMSA that they believed the notice of termination was invalid. MMSA's representatives never told Canepa that the notice of termination was a "mere formality" or that AMG could disregard it.

During the negotiation of the buy/sell, MMSA never mentioned the pending notice of termination to the potential buyer, North Bay, or to AMG's own employees, at the express request of AMG. In early 1991, Vince Joy of MMSA warned Canepa that if he did not close the buy/sell soon, he would not have anything left to sell.

On January 18, 1991, MMSA wrote AMG a letter giving AMG a 10-day extension of time in which to submit the buy/sell proposal to MMSA for approval, so long as MMSA received all the necessary documentation by January 31, 1991.

On February 5, 1991, MMSA received a letter from AMG dated January 29, 1991, stating that North Bay had backed out of the buy/sell agreement.

MMSA terminated AMG's franchise on January 31, 1991. Five days later, MMSA disconnected AMG from its computerized dealer network.

On March 6, 1991, the Board received AMG's protest of the termination. Although the Board acknowledged receipt of the protest, it declined to file it because it was untimely. AMG admits its protest was untimely but claims MMSA's conduct caused the delay in submitting the protest. For this reason, AMG claims the filing deadline was tolled.

MMSA moved to dismiss AMG's protest on the grounds that the Board did not have jurisdiction to consider the protest because it was not received by the Board within the 30-day statutory time limit set forth in Vehicle Code section 3060, subdivision (b). In its opposition, AMG claimed MMSA should be estopped from relying upon the requirements of Vehicle Code section 3060. According to MMSA, equitable tolling did not apply because the 30-day filing requirement within section 3060 was jurisdictional, and not a statute of limitations.

In an April 11, 1991, interlocutory ruling, the Board determined that it could consider the equitable defenses raised by AMG. Accordingly, an evidentiary hearing was held before Michael J. Sieving, an ALJ and assistant executive secretary of the Board. The hearing was held to determine whether the facts and circumstances surrounding MMSA's notice of termination

warranted application of the equitable defenses alleged by AMG. During the two-day hearing, four witnesses testified, including the principal of AMG and its vice-president of finance, and two representatives of MMSA. At the hearing, 22 exhibits were introduced.

After the hearing, the ALJ issued an order rejecting the protest on the grounds that it was untimely and that there was insufficient evidence to establish estoppel. In support of this order, the ALJ determined that (1) the October 18, 1990, notice of termination was valid and complied with all statutory requirements of Vehicle Code section 3060; (2) AMG's purported protest was not received by the Board within the 30-day time limit set forth in Vehicle Code section 3060; and (3) there was insufficient evidence to support a finding that MMSA made representations upon which AMG could have reasonably relied, causing AMG to delay in filing a timely protest.

AMG petitioned for a writ of administrative mandamus on September 19, 1991. Answers to the petition were filed by the Board and by MMSA. AMG petitioned for a peremptory writ of mandate on December 12, 1991. MMSA and the Board opposed this motion.

A hearing was held on March 19, 1992. At the hearing, the trial court denied AMG's writ petition and affirmed the decision of the ALJ, finding, among other things, that the ALJ's decision was supported by substantial evidence. On April 27, 1992, a judgment was entered denying the petition.

This appeal ensued.

### Standard of Review

■ The trial court reviews the decision of the Board to determine if it is supported by substantial evidence. (*Piano* v. *State of California* ex rel. *New Motor Vehicle Bd.* (1980) 103 Cal.App.3d 412 [163 Cal.Rptr. 41].) In so doing, the trial court essentially performs an appellate function. (*American Isuzu Motors, Inc.* v. *New Motor Vehicle Bd.* (1986) 186 Cal.App.3d 464, 474 [230 Cal.Rptr. 769].)

AMG argues that the trial court should have reviewed the ALJ's decision under an independent judgment standard. The independent judgment standard of review is applied only where the administrative decision substantially affects a fundamental, vested right. (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 143 [93 Cal.Rptr. 234, 481 P.2d 242].)

No case has held that an automobile franchise is a fundamental vested right. Instead, "[i]t has been repeatedly held that the preservation of purely

economic interests does not affect the fundamental vested rights of the petitioner." (*British Motor Car Distributors, Ltd.* v. *New Motor Vehicle Bd.* (1987) 194 Cal.App.3d 81, 90 [239 Cal.Rptr. 280].)

Indeed, a plethora of cases indicate that the substantial evidence test applies in circumstances such as these. In *Ray Fladeboe Lincoln-Mercury, Inc.* v. *New Motor Vehicle Bd.* (1992) 10 Cal.App.4th 51 [12 Cal.Rptr.2d 598], the appellate court affirmed the trial court's decision to deny a franchisee's writ petition. In so doing, the court held that "the trial court properly denied [franchisee's] consolidated petition because *substantial evidence* supports the Board's findings . . . ." (*Id.* at p. 53.)

Similarly, in *Piano* v. *State of California* ex rel. *New Motor Vehicle Bd.*, *supra*, 103 Cal.App.3d 412, the Board overruled a dealer's protest against the establishment of a new dealership. The trial court determined that the Board's decision was supported by substantial evidence. On appeal, the court stated that "upon review we uphold the ruling of the trial judge that there was substantial evidence to support the findings of the Board and that the Board's decision was supported by the findings." (*Id.* at p. 422.)

Other cases applying the substantial evidence test include *Sonoma Subaru, Inc.* v. *New Motor Vehicle Bd.* (1987) 189 Cal.App.3d 13, 22, fn. 2 [234 Cal.Rptr. 226] and *American Isuzu Motors, Inc.* v. *New Motor Vehicle Bd.* (1986) 186 Cal.App.3d 464, 474 [230 Cal.Rptr. 769]. In *British Motor Car*, *supra*, 194 Cal.App.3d 81, the trial court applied the independent judgment test but the appellate court reversed and held that the substantial evidence test applied.

In *Champion Motorcycles, Inc.* v. *New Motor Vehicle Bd.* (1988) 200 Cal.App.3d 819 [246 Cal.Rptr. 325], the Board overruled a franchisee's protest filed against its franchisor. After the trial court denied the franchisee's petition, the franchisee appealed. The appellate court held that the trial court properly applied the substantial evidence test because a fundamental vested right was not affected. (*Id.* at pp. 824-825.)

Although AMG argues that these cases are distinguishable, it has not cited one case in which the independent judgment test was applied in circumstances such as these. Indeed, as noted above, the authority is to the contrary. For these reasons, we conclude that the trial court was correct in applying the substantial evidence test.

*Discussion*

A. *Motion to Dismiss*

██ AMG argues that the motion to dismiss procedure utilized by the Board was improper. AMG states that "The Board must file the Protest, then send the notice set forth in Vehicle Code § 3060(a)(3)(b). The Board received the AMG Protest which alleged, *inter alia*, the basis for late filing, sent the notice otherwise required by the code, but never filed the Protest, nor conducted a hearing as required by § 3066." As we shall explain, we conclude this contention is without merit.

In 1973, the Board, formerly the New Car Dealers Policy and Appeals Board, was established in its present form. Besides renaming the Board, the Legislature also empowered the Board to resolve disputes between new car dealers and manufacturers under Vehicle Code section 3060. Section 3060 provides that no new car franchisor shall "terminate or refuse to continue any existing franchise" without reasons constituting "good cause." In general, the reasons must be communicated in writing to the franchisee and the Board at least 60 days prior to the termination or refusal to continue. (Veh. Code, § 3060; *British Motor Car Distributors, Ltd.* v. *New Motor Vehicle Bd.*, *supra*, 194 Cal.App.3d 81, 87.)

Section 3060 permits a franchisee to protest a notice of termination or refusal to continue. It provides, in part, that "The franchisee may file a protest with the board within 30 days after receiving a 60-day notice or within 10 days after receiving a 15-day notice. When a protest is filed, the board shall advise the franchisor that a timely protest has been filed, that a hearing is required pursuant to Section 3066, and that the franchisor may not terminate or refuse to continue until the board makes its findings."

Vehicle Code section 3066 provides, in pertinent part, "(a) Upon receiving a notice of protest pursuant to Section 3060, 3062, 3064, or 3065, the board shall fix a time, which shall be within 60 days of the order, and place of hearing, . . . The board, or a hearing officer designated by the board, shall hear and consider the oral and documented evidence introduced by the parties and other interested individuals and groups, and the board shall make its decision solely on the record so made. Sections 11507.6, 11507.7, except subdivision (c), 11510, 11511, 11513, 11514, 11515, and 11517 of the Government Code apply to these proceedings."

In this case, MMSA filed a "motion to dismiss" AMG's protest on the grounds that the protest was untimely. In opposition to the motion, AMG

claimed that MMSA should be estopped from relying upon the time requirements of section 3060. In April 1991, the Board determined that it could consider the equitable defenses raised by AMG. Thus, an evidentiary hearing was held before an ALJ. During this hearing, four witnesses testified, and twenty-two exhibits were introduced.

AMG contends this procedure was flawed. It contends that there is no provision in the Administrative Procedure Act for a motion to dismiss. AMG also argues that it was improper for the ALJ to preside over the hearing. We conclude that no error occurred.

■ "A proceeding before an administrative officer or board is adequate if the basic requirements of *notice* and *opportunity for hearing* are met." (7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 518, p. 715, italics in original.) "The sufficiency of the notice and hearing is determined by considering the purpose of the procedure, its effect on the rights asserted, and other circumstances." (*Ibid.*; *Anderson Nat. Bank* v. *Luckett* (1944) 321 U.S. 233 [88 L.Ed. 692, 64 S.Ct. 599, 151 A.L.R. 824].) ■ Although AMG argues that the Board should have accepted the petition for filing, and then adjudicated the merits of the timeliness issue, we believe that permitting the ALJ to hear the issue as a "motion to dismiss" was fair. A hearing was held. AMG was permitted to introduce evidence. Four witnesses testified. Twenty-two exhibits were introduced. Thus, it seems quite clear that AMG was afforded an opportunity to be heard consistent with the requirements of due process.

In addition, a motion to dismiss was utilized in *British Motor Car Distributors, Ltd.* v. *New Motor Vehicle Bd., supra,* 194 Cal.App.3d 81. In that case, Maserati terminated the British Motors franchise. Over one year later, British Motors protested the termination. Maserati then filed a motion to dismiss the protest on the grounds that it was untimely. The motion was denied by the board. (*Id.* at p. 93.) Although *British Motor Car Distributors, Ltd., supra,* did not analyze the propriety of the motion to dismiss procedure, it is noteworthy that the procedure *was* employed in that case, and that its propriety was never questioned by the appellate court or the parties.

Further, it was permissible for the ALJ to hear the issue. Although the statutory provisions do not address the procedure to be employed in determining whether a protest is timely, the statutory scheme as a whole indicates that either an ALJ or the Board may preside over a hearing falling within the Board's jurisdiction. For example, Vehicle Code section 3066 states that "The board, *or a hearing officer designated by the board,* shall hear and

consider the oral and documented evidence introduced by the parties. . . ." (Italics added.) Further, under Government Code section 11517, which is applicable to Board proceedings (Veh. Code, § 3066), an ALJ may hear a contested case. If an ALJ hears a case, then the ALJ "shall prepare within 30 days after the case is submitted a proposed decision in such form that it may be adopted as the decision in the case. The agency itself may adopt the proposed decision in its entirety, or may reduce the proposed penalty and adopt the balance of the proposed decision." (Gov. Code, § 11517, subd. (b).) Similarly, Vehicle Code section 3067, regarding the decision of the Board, refers to situations where "the case is heard before a hearing officer alone . . . ." Accordingly, it is evident that having an ALJ preside over the hearing is contemplated under the statutory provisions. Thus, we cannot fathom any reason why the ALJ should have been precluded from presiding over the hearing regarding the timeliness of AMG's protest.

In this case, it is not crucial whether the protest was "accepted" for filing or whether MMSA's motion is termed a "motion to dismiss." What is important is that AMG's estoppel defense was ultimately the subject of an evidentiary hearing. An ALJ was authorized to consider the issue, an evidentiary hearing was held, and AMG had an opportunity to present its position. Four witnesses testified. Twenty-two exhibits were introduced. Since these due process requirements were met, we conclude that AMG has not been prejudiced by having the ALJ preside over the motion to dismiss hearing.

B. *Review by the Board*

AMG next contends that even if the motion to dismiss procedure were permissible, the Board should have reviewed the ALJ's decision. We agree.

The statutory provisions do not address the procedure to be utilized in determining whether a protest is timely. Thus, the statutes do not delineate whether an ALJ may determine the issue alone, or whether the ALJ's determination must be reviewed by the Board. However, the statutory scheme does indicate that the Board should render the ultimate decision with respect to hearings under Vehicle Code section 3066. We believe the same amount of review is warranted in determining whether a protest is timely. In reaching this conclusion, we shall first explain why the Board must render the ultimate decision under section 3066. Next, we shall consider why the Board should also render the final decision in determining whether a protest is timely.

Although Vehicle Code section 3066 indicates that a hearing officer may consider the evidence, the statute also suggests that the Board must make the final decision. Section 3066 states that "The board, or a hearing officer designated by the board, shall hear and consider the oral and documented evidence introduced by the parties and other interested individuals and groups, and *the board shall make its decision solely on the record so made.*" (Italics added.) Because there is no reference to the hearing officer in the portion of the statute referring to "decision," section 3066 appears to require that the Board make the final decision regarding protests.

Vehicle Code section 3050 also indicates that the Board should make the ultimate decision with regard to protests under Vehicle Code section 3060. Section 3050 delineates the duties of the Board. It provides, in pertinent part, that the Board shall "(d) Hear and consider, within the limitations and in accordance with the procedure provided, a protest presented by a franchisee pursuant to Section 3060, 3062, 3064, or 3065." Since the statute uses the word "shall," section 3050 suggests that the Board must consider and render a decision regarding a protest filed pursuant to section 3060.

Vehicle Code section 3067 provides that "The decision of the board shall be in writing and shall contain findings of fact and a determination of the issues presented. . . . If the board fails to act within 30 days after such hearing, within 30 days after the board receives a proposed decision where the case is heard before a hearing officer alone, or within such period as may be necessitated by Section 11517 of the Government Code or as may be mutually agreed upon by the parties, then the proposed action shall be deemed to be approved." Section 3067 indicates that the findings of an ALJ may be adopted by the Board (see also Gov. Code, § 11517).

Having concluded that the Board must render the ultimate decision under Vehicle Code section 3066, we next consider whether the Board should also render the final decision in deciding whether a protest is timely. We believe the same amount of review is warranted. First, harm might result if an ALJ makes an incorrect decision regarding the timeliness of a protest under Vehicle Code section 3060. Second, it is a relatively simple matter for the Board to review the ALJ's determination. Indeed, as already noted, it may be that the Board need only adopt the findings of the ALJ. (Veh. Code, § 3067; see also Gov. Code, § 11517.) Third, it makes more sense to give the Board an opportunity to review any errors by the ALJ, than it does to require an aggrieved party to seek relief through the courts. Indeed, this is the essence of the doctrine of exhaustion of administrative remedies. Finally, MMSA has not provided us with any policy reasons why the Board should not be

permitted to review an ALJ's decision regarding the timeliness of a protest. Nor has MMSA cited any authority which conflicts with our conclusion. Accordingly, we hold that the Board should be required to render the ultimate decision in deciding whether a protest under section 3060 is timely.

As previously noted, Vehicle Code section 3067 indicates that the findings of an ALJ may be adopted by the Board. (See also Gov. Code, § 11517.) Thus, it might appear irrelevant that the Board failed to consider the issue in this case since the Board was empowered to adopt the ALJ's findings. However, in this case, the Board was never given an opportunity to act. The ALJ did not submit a proposed decision to the Board. The Board never exercised any discretion with regard to MMSA's motion to dismiss because the motion to dismiss was determined solely by the ALJ. In particular, in the ALJ's statement of decision, he concluded that "There shall be no further proceedings in this cause before the Board." For this reason, we believe that the Board should be given an opportunity to review the ALJ's decision.

## C.  *Exhaustion of Administrative Remedies*

MMSA argues that AMG never requested that the Board hear the matter. Thus, MMSA contends that AMG failed to exhaust its administrative remedies. We disagree.

Under the doctrine of exhaustion of administrative remedies, ". . . where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 292 [109 P.2d 942, 132 A.L.R. 715]; *Yamaha Motor Corp.* v. *Superior Court* (1986) 185 Cal.App.3d 1232, 1240 [230 Cal.Rptr. 382].) The purpose of the doctrine is to lighten the load upon the courts in cases where administrative remedies are available and designed to provide the requested relief. (*Morton* v. *Superior Court* (1970) 9 Cal.App.3d 977, 982 [88 Cal.Rptr. 533]; *Yamaha Motor Corp.* v. *Superior Court, supra*, 185 Cal.App.3d at p. 1240.)

There are exceptions to the exhaustion of administrative remedies doctrine. The doctrine is inapplicable where "the administrative remedy is inadequate [citation]; where it is unavailable [citation]; or where it would be futile to pursue such remedy [citation]." (*Karlin* v. *Zalta* (1984) 154 Cal.App.3d 953, 980 [201 Cal.Rptr. 379].)

We believe this case comes within the futility exception. In his statement of decision, the ALJ concluded, "Accordingly, the protest is not accepted for filing with the New Motor Vehicle Board. *There shall be no*

*further proceedings in this cause before the Board.*" (Italics added.) Thus, not only did the Board not have an opportunity to review the matter, the ALJ expressly stated that the Board should *not* consider the protest. Given this statement, it appears that it would have been futile for AMG to have pursued the matter before the Board. Thus, we conclude that AMG has exhausted its administrative remedies.

■ Finally, MMSA argues that any error was harmless because the same result would have been reached had the error not been committed. (Code Civ. Proc., § 475; Cal. Const., art. VI, § 13.) We disagree. The issue is not whether there is substantial evidence to support the ALJ's determination. The issue is whether AMG was afforded the procedure due it. And although having the ALJ consider the timeliness of the protest was permissible, it was not permissible for the ALJ to fail to submit the proposed decision to the Board. Because there is no way to determine what result would have occurred had the Board had the opportunity to review the ALJ's decision, the matter must be remanded so that the Board may consider the issue. It is not possible to label as "harmless" the Board's failure to review the ALJ's decision.

### Conclusion

The ALJ's decision regarding the timeliness of the protest should have been submitted to the Board for review. Accordingly, the matter is remanded so that the Board may have an opportunity to consider this issue. Costs on appeal to AMG.

Premo, Acting P. J., and Wunderlich, J., concurred.